UNITED STATES of America, Appellee,

v.

**Michael SHOULBERG,**
**Defendant–Appellant.**

**No. 561, Docket 89–1197.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1990.

Decided Feb. 6, 1990.

Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, Bonnie S. Klapper, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Robert S. Dunn, New York City, for defendant-appellant.

Before KEARSE and WINTER, Circuit Judges, and HAIGHT, District Judge.*

KEARSE, Circuit Judge:

Defendant Michael Shoulberg appeals from a judgment entered in the United States District Court for the Eastern District of New York, convicting him, following his plea of guilty before Joseph M. McLaughlin, *Judge*, of possession of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1988). Shoulberg was sentenced to 84 months in prison, five years of supervised release, and a $50 special assessment. On appeal, he contends that his offense level was improperly increased under § 3C1.1 of the federal Sentencing Guidelines ("Guidelines"), on account of conduct wrongly characterized as attempted obstruction of justice. We disagree and affirm the judgment of conviction.

## I. BACKGROUND

Most of the pertinent facts are not in dispute. In August 1988, four men, including Shoulberg, Issam Hamsho, a/k/a "Sonny," and William Rogan, a/k/a "Billy," were arrested when they attempted to sell cocaine to an undercover law enforcement agent. They were detained at the Metropolitan Correctional Center ("MCC") and were eventually indicted in a three-count superseding indictment charging them with, *inter alia,* possessing cocaine with intent to distribute it and conspiring to do so. Also named as a codefendant in the postarrest complaint, though not in the indictments, was one Michael Penna.

While in MCC awaiting trial, Shoulberg gave Hamsho a note that stated as follows:

Sonny—listen, I might be getting out on bail. I didn't even know you on the street so I can't hurt you. The other guys I don't trust at all. Billy's nothing. They'll work on Penna—tell me where does he live. If he is fucking I got a trick for his ass. Write me back today.

MCC officials took the note from Hamsho. Apparently, Shoulberg did not make contact with Penna.

In December 1988, Shoulberg pleaded guilty to the possession count, in full satisfaction of the superseding indictment. For sentencing, the probation department calculated Shoulberg's offense level and imprisonment range under the Guidelines by including two levels for attempted obstruction of justice under Guidelines § 3C1.1, based on Shoulberg's note to Hamsho.

At his sentencing hearing, Shoulberg did not contend that he had not given the note to Hamsho, but he objected to its characterization as anything more than an inchoate thought. His attorney stated as follows:

The issue here is that the letter is nothing more than a written expression of a thought of Mr. Schulberg's [*sic*]. There is no evidence whatsoever that this thought was ever communicated to the actual third-party Mr. Penna such as to influence or motivate or do anything which would be able to obstruct or impede these proceedings. There is no evidence at all that Mr. Penna was even aware of it, Your Honor. Therefore, the difference between an attempt and the intent would be an overt act. And the mere expression in writing of an intent without it being in any way communicated or no other overt act or no steps taken to communicate said intent to the party in interest to me falls far short of what is intended pursuant to guideline 3(c)1.1 [*sic*].

Counsel also argued that the statement, "I got a trick for his ass," was ambiguous and that "[e]xactly what that means is left up to the individual person who is perceiving it for what it is." In response, the government pointed out that Shoulberg had previously been convicted of armed robbery, and it argued that the court could reasonably infer that Shoulberg's words portended violence.

---

* Honorable Charles S. Haight, Jr., Judge of the United States District Court for the Southern District of New York, sitting by designation.

The district court rejected Shoulberg's arguments, stating as follows:

The Court has received as Exhibit 1 a letter which apparently everybody is conceding was written by the defendant, Mike to Sonny. I think it is not realistic to characterize this as a solitary rumination by a person, an uncommunicated thought which of course is not to be punished. This is, in fact, a threat communicated to an intermediary—not to the victim of the threat in which the intermediary assistance is enlisted.

This strikes the Court as more than an uncommunicated threat. It is an attempt to implement the threat and therefore, believes [sic] that the probation department was quite correct in adding two points on line 16 as an enhancement for an attempted threat to a codefendant.

Accordingly, the court concluded that Shoulberg had attempted to obstruct justice with respect to the present prosecution, and it sentenced Shoulberg as indicated above. This appeal followed.

## II. DISCUSSION

On appeal, Shoulberg argues principally that the court could not properly infer a threat from his words, and that, as a matter of law, conduct such as that proven here does not constitute an attempt to obstruct justice. He also argues that the enhancement for attempted obstruction of justice violated his due process rights and his rights under the First Amendment. We reject all of his contentions.

### A. *Attempted Obstruction of Justice*

Section 3C1.1 of the Guidelines provides for an increase of a defendant's offense level for an obstruction, or attempted obstruction, of justice with respect to the offense of which he is accused, stating as follows:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels.

Guidelines § 3C1.1 (amended in nonmaterial respect effective Nov. 1, 1989). The commentary to § 3C1.1 states that the section is directed toward a defendant who "engages in conduct calculated ... to willfully interfere with the disposition of criminal charges, in respect to the instant offense," by, *inter alia*, "threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant [or] witness ... directly or indirectly." *Id.* Commentary & Application Note 1(d). The commentary also provides that "[i]n applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant," *id.* Application Note 2, and that § 3C1.1 "is not intended to punish a defendant for the exercise of a constitutional right," *id.* Application Note 3.

■ In reviewing a sentencing court's application of the Guidelines, an appellate court must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988). Thus, the sentencing court's findings as to what acts were performed, what was said, what the speaker meant by his words, and how a listener would reasonably interpret those words will be upheld unless they are clearly erroneous. *See, e.g., United States v. Stroud,* 893 F.2d 504, 506–07 (2d Cir.1990). A ruling that the established facts constitute attempted obstruction of justice under the Guidelines, however, which is a matter of legal interpretation, is to be reviewed *de novo, id.,* with due deference to the sentencing court, 18 U.S.C. § 3742(e). Thus, the sentencing court's legal ruling will not be overturned unless it is wrong or an abuse of discretion.

#### 1. *The Factual Findings*

■ In the present case, the factual issues as to what acts were performed and what words were written by Shoulberg were never in dispute, for he did not contest either the content of the note as introduced by the government or the fact that he sent the note to Hamsho. Further, Shoulberg did not dispute that Penna was a

prospective witness against him. Indeed, his attorney described Penna as "a leading witness or informant for the government. He is a person that [*sic*] was cooperating with them fully."

Rather, the only factual issue disputed by Shoulberg was the import of his words. This issue was properly resolved adversely to him. The questions of what Shoulberg meant by his note, and what Hamsho or Penna might reasonably have thought he meant, were questions for the sentencing court as trier of fact. Though Shoulberg argues that the statement "I got a trick for his ass" was ambiguous, he concedes, as he must, that one possible interpretation of the words was that Shoulberg intended to "deter[ ] Penna's cooperation with the Government." (Shoulberg brief on appeal at 23.) And though Shoulberg relies on the Guidelines commentary statement that "suspect testimony and statements should be evaluated in a light most favorable to the defendant," the commentary does not preclude a finding of a threat any time the defendant can conjure up some conceivable alternative explanation for his words. The sentencing court remains the finder of fact and may draw all reasonable inferences from the words used and from the pertinent circumstances. The inference that Shoulberg meant that physical violence would be used as a preventive measure against Penna if Penna were otherwise inclined to cooperate, and the inference that Hamsho and Penna would so interpret it, were plainly permissible and may not be disturbed on appeal.

We turn, therefore, to the more difficult question of whether Shoulberg's note to Hamsho, as interpreted by the district court, was sufficient as a matter of law to constitute an attempt to obstruct justice.

### 2. Whether the Established Facts Amounted to an Attempt

■ In fathoming the meaning of "attempt[ ] to impede or obstruct the administration of justice" as used in § 3C1.1, we draw on general criminal law principles regarding attempts to commit crimes. We have held that a person is guilty of an attempt to commit a crime if he had the intent to commit the crime and engaged in conduct amounting to a substantial step towards its commission. *United States v. Martinez,* 775 F.2d 31, 35 (2d Cir.1985); *United States v. Mowad,* 641 F.2d 1067, 1073 (2d Cir.), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981); *United States v. Manley,* 632 F.2d 978, 988–89 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. Jackson,* 560 F.2d 112, 117–20 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977). By a "substantial" step, we mean "something more than mere preparation, yet [perhaps] less than the last act necessary before the actual commission of the substantive crime ....". *United States v. Manley,* 632 F.2d at 987; *see United States v. Jackson,* 560 F.2d at 118–19; *United States v. Coplon,* 185 F.2d 629, 632–33 (2d Cir.1950) (L. Hand, *Ch. J.*), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). In all cases, we bear in mind that

> mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.
>
> Whether conduct represents a substantial step towards the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts.

*United States v. Manley,* 632 F.2d at 988 (quoting *United States v. Monholland,* 607 F.2d 1311, 1318 (10th Cir.1979)).

In the present case, if one or another of the facts proven had existed in isolation, one might reasonably conclude that Shoulberg's acts did not amount to an attempt. For example, if Shoulberg had merely asked for Penna's address without indicating that he wanted it in order to forestall Penna's cooperation with the government, or if he had merely expressed to Hamsho the hope that Penna was not cooperating

without asking for Penna's address, neither of those bare acts would have constituted an attempt to obstruct justice. The facts in this case, however, were otherwise, and the sentencing court properly refused to view them piecemeal rather than in conjunction. As written, the note combined the request for Penna's address, the indicated intention to use force to prevent Penna from cooperating, and the stated possibility that Shoulberg would soon be released from detention. Although Shoulberg's note was directed to Hamsho rather than to Penna and did not specifically request that Hamsho convey the message to Penna, the district court noted the possibility that, had the government not intervened, the content of the note might have been so relayed, and it characterized the note as "a threat communicated to an intermediary." It is hardly farfetched to envision Hamsho, after receiving Shoulberg's note, making a statement to Penna such as, "Shoulberg says if you are fucking around he's got a trick for your ass. He says he might be getting out of MCC soon, and he wants your address." Had Hamsho made such a statement to Penna, and had Penna then declined to cooperate with the government, we have no doubt that it would be proper to hold Shoulberg responsible for an actual obstruction of justice through the intimidation of Penna. Since § 3C1.1 also reaches attempts to obstruct, whether direct or indirect, we conclude that the sentencing court did not err or abuse its discretion in ruling that Shoulberg's note to Hamsho constituted an attempt to intimidate Penna.

## B. Shoulberg's Other Contentions

■ Shoulberg makes a variety of other arguments, including the contentions that the application of § 3C1.1 to him violated his rights under the First Amendment and that, in determining whether Shoulberg had attempted to obstruct justice, the court was required to apply the beyond-a-reasonable-doubt standard. These contentions need not detain us long.

In contending that his First Amendment rights have been violated, Shoulberg argues that he was "punished for exercising his constitutional right of freedom of speech as provided by the First Amendment in that the alleged letter was merely an expression of a thought implying no more than a hyperbole." (Shoulberg brief on appeal at 19.) We reject this contention. Unlike the conduct in the cases relied on by Shoulberg, e.g., Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam), which involved a hyperbolic political statement of view, Shoulberg's statement was neither abstract nor hyperbolic. He implied that he would use violence to prevent Penna's cooperation, stated that he might be released soon, asked for Penna's address, and told Hamsho to write him back that day. His note carried overtones of imminent threat. The First Amendment does not guarantee a right to make intimidating threats against government witnesses. See, e.g., Watts v. United States, 394 U.S. at 707, 89 S.Ct. at 1401 (statute prohibiting threats against President "is constitutional on its face"); United States v. Kelner, 534 F.2d 1020, 1025–27 (2d Cir.) (threat to injure another is not protected by First Amendment), cert. denied, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976); United States v. Velasquez, 772 F.2d 1348, 1357–58 (7th Cir.1985) (threat to retaliate against informant is not protected by First Amendment), cert. denied, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).

■ Finally, in contending that the court was required to determine whether an attempt was established beyond a reasonable doubt, Shoulberg ignores precedent and perhaps misapprehends the nature of the principal question presented here. With respect to questions of fact, we have held that the sentencing court may make its findings based on a preponderance of the evidence. See United States v. Guerra, 888 F.2d 247, 251 (2d Cir.1989); see also United States v. Rivalta, 892 F.2d 223, 230 (2d Cir.1989). Thus, the court was entitled to use the preponderance standard, rather than the reasonable-doubt standard, in determining what was said and what was meant. Accord United States v. McDowell, 888 F.2d 285, 290–92 (3d Cir.1989)

(preponderance standard applied to factual question under § 3C1.1). Further, the question of whether the established facts were sufficient to constitute an attempt was a matter of law. The preponderance and reasonable doubt standards are not directed toward questions of law.

## CONCLUSION

We have considered all of Shoulberg's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.