941 F.2d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlton HALL, a/k/a Rocky Top, Defendant-Appellant.
 No. 90-5693.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1991.
Decided Aug. 21, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-89-232)
 Franklin Dorrah Cleckley, Morgantown, W.Va., for appellant.
 William Joseph Powell, Assistant United States Attorney, Charleston, W.Va. (Argued), for appellee; Michael W. Carey, United States Attorney, Hunter P. Smith, Jr., Assistant United States Attorney, Charleston, W.Va., on brief.
 S.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before SPROUSE and WILKINS, Circuit Judges, and GEORGE ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Jon Carlton Hall appeals his conviction and sentence of 121 months' imprisonment and four years' supervised release for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); and distribution of cocaine within 1,000 feet of a public secondary school, in violation of 21 U.S.C. § 845a.[1] We affirm in part, reverse in part, and remand.
 
 
 2
 Hall moved to Mount Hope, West Virginia, from Detroit, Michigan, in early 1988. Local police investigation uncovered Hall's distribution of cocaine commencing shortly after his arrival in that community. Using "wired" conversations and confidential informants who initially purchased cocaine through third parties who distributed the narcotics for Hall, law enforcement officers documented Hall's involvement in drug trafficking. In November 1989, a federal grand jury in the Southern District of West Virginia returned a ten-count indictment containing one count of conspiracy and nine counts of distribution of cocaine. One day before trial began, the district court granted the government's motion to dismiss six counts of the indictment.[2] Hall was then tried and convicted on all four remaining counts. After his motion for a new trial was dismissed, Hall was sentenced to 121 months' in prison with four years supervised release.
 
 
 3
 On appeal, Hall contends the trial court committed several errors: two evidentiary, two procedural and one in the sentencing phase: (1) that the admission of "threat testimony" was an abuse of discretion; (2) that disallowance of recall of a witness denied him adequate opportunity for impeachment; (3) that he was erroneously denied a new trial based on newly discovered evidence; (4) that he was prejudiced by the government's dismissal of six counts in the ten-count indictment; and (5) that the court committed error in enhancing his sentence for obstruction of justice.
 
 
 4
 Hall first argues that the court committed prejudicial error in allowing the government to introduce, as evidence of conspiracy, testimony regarding a threat made by Hall. The testimony of Mary Muse, one of Hall's former customers, revealed that in response to an inquiry as to what he would do if someone informed law enforcement officers of his activities, Hall said that if anyone "turned him up" he would kill them. The district court found this statement could be construed as a threat against informers. Testimony of threats made by a defendant, of course, is relevant evidence of consciousness of guilt. See United States v. Guerrero, 803 F.2d 783, 785 (3d Cir.1986); United States v. Rosa, 705 F.2d 1375, 1377 (1st Cir.1983) (per curiam). Hall urges, however, that the prejudicial effect of the evidence outweighed its probative value and the district court erred in refusing to exclude it. Specifically, he contends that not only was the evidence possibly used by the jury to convict simply because it perceived him to be a violent man, but the testimony also formed the basis of the court's denial of post-conviction bond. Moreover, he contends, the evidence was unnecessary to the establishment of the government's case. After reviewing the testimony at issue, we are persuaded that the district court correctly weighed the probative value against the possible unfairly prejudicial effect as required by Rule 403 of the Federal Rules of Evidence and concluded that the latter did not outweigh the statement's probative value. The record reveals that the government did not dwell upon the threat evidence nor mention it in closing arguments, while defense counsel referred to it both during examination and closing argument. Further, we have no doubt that there was a need for the evidence as proof of the conspiracy since it pertained to the central issue of consciousness of guilt and Hall's role in the conspiracy. Recognizing that the threat testimony need not have been the strongest evidence of the existence of a conspiracy, United States v. Peters, 791 F.2d 1270, 1292 (7th Cir.), cert. denied, 479 U.S. 847 (1986), we conclude that its introduction was not an abuse of discretion.
 
 
 5
 The second instance of evidentiary error contended by Hall relates to the trial court's refusal to permit the recall of government witness Luther Necessary to address the subsequent testimony of Necessary's wife in which she denied that she used drugs and received profits from the sale of drugs. Through Luther Necessary's proposed refutations of his wife's statements, Hall would have tried to show that Sharon Necessary falsified her testimony due to bias--i.e., that she had an interest in the increased profits her husband would derive from the expanded drug trade territory resulting if Hall were sent to prison. To this end, Hall intended to have Luther Necessary testify about his taped statement revealing that his wife had participated in the drug deals and the profits of his drug trafficking. The trial court ruled that such evidence would be improper impeachment under Rule 608(b) of the Federal Rules of Evidence[3] since it is tantamount to attacking the credibility of a witness through specific instances of conduct. We do not discern any abuse of the trial court's discretion.
 
 
 6
 Likewise, we find no error in the two procedural rulings attacked by Hall. First, the court's decision to allow dismissal of six counts of the original indictment did not prejudice Hall. He contends that dismissal usurped his alibi defense to the dismissed counts which could have been used to impeach the general credibility of government witnesses in regard to the remaining counts. We find this argument unpersuasive.
 
 
 7
 Second, the trial court did not err in denying Hall's motion for new trial due to newly discovered evidence. The evidence upon which Hall based this motion consisted of a canceled social security check which he had deposited. He contends that the check, which he sought to retrieve prior to the end of trial but which arrived ten days after the jury returned its verdict, tended to show he was in Detroit, Michigan on February 4, 1988, the date of the drug transaction alleged in dismissed Count Two. Hall argues that the introduction of the check would thereby have impeached the overall testimony of government witnesses who indicated he sold drugs on that date. Even assuming the check constitutes new evidence, this Court has made clear that new evidence going only to the credibility of a witness is not sufficient to justify the granting of a new trial. United States v. Stockton, 788 F.2d 210, 220 (4th Cir.), cert. denied, 479 U.S. 840 (1986) (citing United States v. Williams, 415 F.2d 232, 233 (4th Cir.1969)).
 
 
 8
 We find, however, that the district court erred in the sentencing phase of the case by enhancing Hall's base offense level by two points pursuant to § 3C1.1 of the United States Sentencing Guidelines. Section 3C1.1 provides:
 
 
 9
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 10
 The Muse testimony regarding the general threat to informers formed the basis for the court's enhancement. Again, Muse testified "[Hall] made a statement that if anyone turned him up, or something like that, that he would kill them or something." There is, of course, no question that threats against witnesses are sufficient grounds for obstruction of justice enhancements. See U.S.S.G. § 3C1.1, comment. (n. 3); see also United States v. Shoulberg, 895 F.2d 882, 885-86 (2d Cir.1990); United States v. Penson, 893 F.2d 996, 998 (8th Cir.1990); United States v. Velasquez-Mercado, 872 F.2d 632, 636 (5th Cir.), cert. denied, 110 S.Ct. 187 (1989). It is also beyond question that a district court's findings of fact in the sentencing process must be sustained if they are supported by a preponderance of evidence, United States v. Urrego-Linares, 879 F.2d 1234, 1237 (4th Cir.), cert. denied, 110 S.Ct. 346 (1989), and its application of the guidelines when the issue is largely factual is reviewed under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 11
 Guideline Section 3C1.1, however, mandates that the obstruction be willful. This requires a finding that Hall consciously acted "with the purpose of obstructing justice." United States v. Stroud, 893 F.2d 504, 507 (2d Cir.1990). While conduct occurring during an investigation is within the realm of obstruction-type activities, the Sentencing Guidelines pertain to actions done by the defendant "upon learning that an official investigation has commenced or is about to commence." See U.S.S.G. § 3C1.1, comment. (n. 3). The government concedes that there was no evidence that Hall had any knowledge that his activities were being investigated at the time the general threat was uttered, some five months prior to arrest. Compare United States v. Osborne, 931 F.2d 1139, 1151 (7th Cir.1991) (defendant had knowledge at the time of threat of the identities of proposed witnesses against him). We have held that criminal attempt entails intent plus a substantial step towards commission of the crime. United States v. Pelton, 835 F.2d 1067, 1074 (4th Cir.1987), cert. denied, 486 U.S. 1010 (1988). These same principles inform the meaning of attempt for purposes of section 3C1.1. See Shoulberg, 895 F.2d at 885. There was no evidence that Hall took any action to implement the threat. Nor was there evidence that Hall intended Muse to relay the statement to others. Cf. Shoulberg, 895 F.2d at 886 ("Although Shoulberg ... did not specifically request that Hamsho convey the [threat] to Penna, the district court noted the possibility that, had the government not intervened, the [threat] might have been so relayed, and it characterized the note as 'a threat communicated to an intermediary' "). In our view, there is simply insufficient evidence that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing." U.S.S.G. § 3C1.1.
 
 
 12
 In view of this, the case is remanded to the district court with instructions to resentence Hall without the enhancement of two levels provided by U.S.S.G. § 3C1.1. The judgment of the district court is affirmed in all other respects.
 
 
 13
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 21 U.S.C. § 845a has been transferred to 21 U.S.C. § 860
 
 
 [2]
 The trial court dismissed Counts Two, Three, Four, Five, Eight, and Nine of the indictment pertaining to six identified incidents of distribution ranging in time from February 4, 1988, through May 14, 1988, and one count during the summer months
 
 
 [3]
 Federal Rule of Evidence 608(b) provides in part:
 (b) Specific instances of conduct.--Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.