**William B. MELUGIN, Plaintiff–Appellant,**

v.

**Lloyd F. HAMES, Commissioner, Defendant–Appellee.**

No. 93–36109.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1994.

Decided Oct. 25, 1994.

**1480**

Nancy J. Shaw, Asst. Federal Public Defender, Anchorage, AK, for plaintiff-appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, AK, for defendant-appellee.

Before: PREGERSON, CANBY, and BOOCHEVER, Circuit Judges.

Opinion by Judge PREGERSON; Dissent by Judge CANBY.

PREGERSON, Circuit Judge:

## OVERVIEW

William B. Melugin, an Alaska state prisoner, appeals the District Court's denial of his habeas petition. Melugin challenges his conviction for interference with official proceedings on the grounds that the Alaska statute under which he was convicted is unconstitutionally vague and overbroad in violation of the First Amendment. We have jurisdiction pursuant to 28 U.S.C. § 2253. We affirm.

## BACKGROUND

In the mid–1980's, William B. Melugin, a resident of Cordova, Alaska, became involved in a dispute with the Cordova Telephone Cooperative (the "Co-op") over loss of telephone services provided by the Co-op to Melugin's small trucking business. Melugin claims that, as a result, he lost his business. Efforts to settle the dispute failed.[1]

In April of 1987, Melugin filed a civil complaint in Alaska superior court against the Co-op. Shortly after the Co-op filed its answer, Melugin came to the courthouse in Cordova and spoke with state Magistrate Susan Weltz and demanded that his case be set for trial immediately. Magistrate Weltz told Melugin that setting a trial date was not a simple matter and explained that trial

---

1. According to Melugin, although the Co-op claimed to be willing to repair the telephone, and then reported to Melugin that the telephone was fixed, the telephone remained inoperative for a period of time. Melugin sought relief from the Co-op board, which allegedly agreed to settle the claim for $5,000 and four months' waiver of service charges. Although the Co-op restored service, it also billed Melugin for service during the period that the Co-op had agreed not to bill for service. Melugin reported to the Co-op that he had received the bills, and was advised to ignore the billing statements. The Co-op, however, disconnected Melugin's telephone service for failure to pay the outstanding bills. Melugin then filed a civil suit against the Co-op claiming damage to his business.

dates were set by the superior court in Anchorage. Melugin became increasingly angry and began yelling at Magistrate Weltz, who in turn became so frightened by Melugin's behavior that she locked the door to her chambers when Melugin left.

Several months later, on September 17, 1987, the Co-op filed a motion for summary judgment against Melugin. The Co-op's counsel mailed Melugin a copy of the motion. Two days later, Melugin addressed the following letter to Anchorage Superior Court Judge Brian C. Shortell, who had been assigned to Melugin's case:

### To Whom It May Concern

I am still waiting for my trial date in the above case. When defendants suspended phone service to my business it was for the express purpose of forcing hardships upon my family. I've had enough. I told them when I lost my home if I had not received a fair trial by jury I was going to kill the things. Last week I signed a quit claim to my home and property. I can stay until I get an honest trial or someone else buys the property. As far as I am concerned the things are living on borrowed time. And this is the last time I am asking for my rights as a human.

The court forwarded a copy of Melugin's letter to the Co-op's attorney, who construed it as a threat and notified the Cordova Police. One month later, in mid-October, Melugin was interviewed by a Cordova police officer concerning the letter. Melugin confirmed that the letter's apparent threat to kill "the things" was directed at the Co-op's manager, members of its board, and Magistrate Weltz. Melugin said that he wrote the letter in hopes of being arrested so that he could receive a trial on his civil claims against the Co-op.

The state took no immediate action on Melugin's letter. On December 7, 1987, Judge Shortell granted the Co-op's motion for summary judgment against Melugin. Melugin was in California at the time, but a friend notified him of the court's ruling.

On December 15, Melugin returned to Cordova but was forced to travel almost immediately to Anchorage for removal of a large cyst that had become severely infected. On December 19, the cyst was surgically removed under general anesthetic. Melugin was released from the hospital the following day. Melugin's physician directed him to take five milligrams of Percodan and ten milligrams of Valium three times daily to relieve pain. Melugin returned to Cordova. Several days later, Melugin had his wound redressed by a Cordova physician, who advised Melugin to take only half of the originally prescribed doses of medication.

On December 28, 1987, Melugin took the originally prescribed doses of Percodan and Valium, armed himself, and drove to the state courthouse in Cordova. There, in an apparently agitated state, Melugin confronted Magistrate Weltz. He demanded to know if the superior court's order granting summary judgment meant that his case had been dismissed. When Magistrate Weltz confirmed that the case had been dismissed, Melugin pulled out the loaded gun and pointed it at Weltz. Magistrate Weltz pressed the security alarm, but Melugin threatened to shoot her if the police arrived. Weltz then called the security police and told them not to come.

Holding Weltz at gunpoint, Melugin demanded an immediate jury trial for his case. Weltz telephoned the presiding superior court judge in Anchorage, who negotiated through Weltz with Melugin, and eventually agreed to fly a judge to Cordova from Anchorage that afternoon so that a jury trial could begin. During these negotiations, Melugin took another dose of his prescribed medications. Within a short time, Melugin began to look weak and ill, showing the effects of the medicines. Approximately one-half hour later, Melugin holstered the gun and told Magistrate Weltz that she was free to leave. After she left, Melugin was taken into custody. The entire siege lasted approximately one and one-half hours.

The State of Alaska indicted Melugin on several counts. The first count, which related to the threatening letter of September 17, 1987 that Melugin had sent, charged him with the offense of interference with official proceedings in violation of AS

11.56.510(a)(1)(D). The indictment also charged Melugin with two counts of kidnapping,[2] one count of third-degree assault, and one count of third-degree weapons misconduct.

Before trial, Melugin moved to dismiss the first count of interference with official proceedings on the ground that the statute under which he was charged was impermissibly vague and overbroad. Melugin's motion was denied. Melugin was tried before a jury and convicted on all counts except one of the two alternative counts of kidnapping.

Melugin then filed a direct appeal to the Alaska Court of Appeals, challenging his conviction. Melugin argued that because the Alaska statute under which he was convicted concerning interference with a judicial proceeding is vague and overbroad, it should not be applied to his conduct. The Alaska Court of Appeals rejected Melugin's argument, and ruled that the statute applied to Melugin's conduct which was intended to prevent the court from dismissing his civil lawsuit, that Melugin's conduct fell within the "hard core" of activity prohibited by the statute, and that the statute was not facially overbroad because "threats" are not protected speech.

Melugin then sought discretionary review with the Alaska Supreme Court. That court denied Melugin's petition.

In September 1992, Melugin filed in the United States District Court a pro se petition for writ of habeas corpus in which he sought to vacate all of his convictions on a number of grounds. Appointed counsel later filed an amended petition challenging only the conviction for interference with official proceedings. The sole ground for relief was: "Alaska Statute AS 11.56.610 (Interference with Official Proceedings) is unconstitutionally vague and overbroad."

Following briefing by both parties, Magistrate Judge John D. Roberts issued a written report and recommendation, concluding that the statute does not infringe on constitutionally protected speech and that the provision is not impermissibly vague as applied to Me-

lugin's conduct. Accordingly, Magistrate Judge Roberts recommended that the habeas petition be denied. After considering Melugin's objections and the state of Alaska's response, Magistrate Judge Roberts declined to modify his recommendation.

United States District Judge James K. Singleton accepted Magistrate Judge Roberts' recommendation, and concluded that the Alaska statute is not overbroad because the United States Constitution does not protect "true threats" to harm persons. Further, Judge Singleton found that the statute was not vague and that Melugin's conduct clearly fell within the "hard core" of cases intended to be covered by the statute.

## DISCUSSION

The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. *Adams v. Peterson,* 968 F.2d 835, 843 (9th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). We accord state court factual conclusions a presumption of correctness under 28 U.S.C. § 2254(d) (1988). *See Callazo v. Estelle,* 940 F.2d 411, 415–16 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, S.Ct. 870, 116 L.Ed.2d 776 (1992). Further, we accept a state court ruling on questions of state law. *Jackson v. Ylst,* 921 F.2d 882, 885 (9th Cir. 1990).

### 1. First Amendment Considerations: Overbreadth

Melugin challenges the constitutionality of AS 11.56.510(a)(1), the statute under which he was convicted, on grounds that the statute violates his First Amendment right to free speech because it is impermissibly vague and overbroad.

The statute reads in pertinent part:

(a) A person commits the crime of interference with official proceedings if the person

---

**2.** The kidnapping counts alleged alternative theories. One charged that Melugin restrained Magistrate Weltz with the intent to use her as a shield or hostage, in violation of AS 11.41.300(a)(1)(B).

The other alleged that Melugin exposed Weltz to a substantial risk of serious physical injury under AS 11.41.300(a)(2)(B).

(1) uses force on anyone, damages the property of anyone, or threatens anyone with intent to

(A) improperly influence a witness or otherwise influence the testimony of a witness;

(B) influence a juror's vote, opinion, decision, or other action as a juror;

(C) retaliate against a witness or juror because of participation by the witness or juror in an official proceeding; or

(D) otherwise affect the outcome of an official proceeding.

Alaska statute AS 11.81.900(b)(55) defines the term "threat" as used in AS 11.41.520 for purposes of interpreting AS 11.56.510(a)(1)(D) as follows:

"threat" means a menace, however communicated, to engage in conduct described in AS 11.41.520(a)(1)–(7) but under AS 11.41.520(a)(1) includes all threats to inflict physical injury on anyone....

Melugin argues that "threat" as used in AS 11.81.900(b)(55) and defined further in AS 11.41.520 (Alaska's extortion statute), which is used to interpret improper conduct for purposes of AS 11.56.510(a)(1)(D), the statute under which Melugin was convicted, includes conduct which is protected by the First Amendment. Had the Alaska Court of Appeals construed "threat" in the present case as including *all* conduct proscribed by the extortion statute,[3] AS 11.56.510(a)(1)(D) might be overbroad as applied to Melugin. There is, however, no need for us to address this question. We reject Melugin's overbreadth argument because we believe that

the Alaska Court of Appeals has given a sufficiently limited construction to the term "threat" for purposes of AS 11.56.510(a)(1)(D). As noted above, we must accept a state court's ruling on questions of state law.

In *Village of Hoffman Estates, et al., v. Flipside, Hoffman Estates, Inc.*, the Supreme Court delineated the proper analysis where overbreadth and vagueness challenges are offered.

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnotes omitted).

The first question, then, is whether Melugin's conduct is entitled to constitutional protection. If the statute in question impermissibly regulates protected speech, then the strict scrutiny test must apply. If, however, Melugin's speech is not constitutionally pro-

---

**3.** In pertinent part, AS 11.81.900(b)(55) provides as follows: "threat" means a menace, however communicated, to engage in conduct described in AS 11.41.520(a)(1)–(7) but under AS 11.41.520(a)(1) includes all threats to inflict physical injury on anyone[.]

This statutory definition refers to subparagraphs (a)(1)–(7) of Alaska's extortion statute, AS 11.41.520. Under those subparagraphs, extortion occurs when a person obtains property of another person by threatening to:

(1) inflict physical injury on anyone, except under circumstances constituting robbery in any degree, or commit any other crime;

(2) accuse anyone of a crime;

(3) expose confidential information or a secret, whether true or false, tending to subject a

person to hatred, contempt, or ridicule or to impair the person's credit or business repute;

(4) take or withhold action as a public servant or cause a public servant to take or withhold action;

(5) bring about or continue a strike, boycott, or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the person making the threat or suggestion purports to act;

(6) testify or provide information or withhold testimony or information with respect to a person's legal claim or defense; or

(7) inflict any other harm which would not benefit the person making the threat or suggestion.

tected, then the state must show only that the statute is rationally related to a legitimate state interest. *See Ripplinger v. Collins,* 868 F.2d 1043, 1050 (9th Cir.1989). Melugin argues that, by proscribing all "threats" without specifying any accompanying conduct, the statute impermissibly regulates protected pure speech in violation of the First Amendment.

We note at the outset that similar claims have been rejected in other jurisdictions. Courts have consistently held that statutes proscribing threats of death and physical injury are not, on their face, overbroad. *See, Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969); *United States v. Khorrami,* 895 F.2d 1186, 1192 (7th Cir.1990).

Melugin, however, argues that his conduct does not fall within these cases. Rather, Melugin looks for support to the exception noted by the Supreme Court in *Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969). There, the Court noted that the statute at issue (which prohibited death threats against the President of the United States) was constitutional on its face. But because the statute "makes criminal a form of pure speech" the nature of the threat must be considered in light of the First Amendment. *Id.* at 707, 89 S.Ct. at 1401. Specifically, the Court stated that "[w]hat is a threat must be distinguished from what is constitutionally protected speech," and noted that only "true threats" may be criminalized. Statements that are mere "political hyperbole" must be viewed " 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and

public officials.' " *Id.* at 708, 89 S.Ct. at 1401 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964)).

Melugin's argument fails for two reasons. First, Melugin's death threats could hardly be considered political hyperbole. The "threat" in *Watts* against President Johnson was made during a public political rally opposing the Vietnam War.[4] Melugin's threats were directed in a private communication to a state judicial officer with the intent to obtain an immediate jury trial.

Second, Melugin's conduct falls within the definition of "true threat" as established by this court (and as applied by the Alaska Court of Appeals in its analysis of Melugin's claims). In *Roy v. United States,* we stated that a "true threat" is sufficiently established where it is made:

> [I]n a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [a person], and that the statement not be the result of mistake, duress, or coercion.

416 F.2d 874, 877–78 (9th Cir.1969).

Melugin claims that his threat was not a "true threat," and characterizes his letter as "one of perhaps hundreds of 'crackpot communications' which the Superior Court receives each year from frustrated and/or unschooled litigants.... [I]n the absence of proof that the letter was actually regarded as constituting a threat, the 'offense conduct' here fails to express more than anger and frustration, which is protected by the Constitution." Further, Melugin argues that his

---

**4.** The incident which led to Watts' arrest occurred during a public rally on the Washington Monument grounds on August 27, 1966. The crowd broke up into small discussion groups. Most of those in the group that Watts joined were in their teens or early twenties. Watts, who was 18 years old, entered into the discussion after another participant suggested that young people should get more education before expressing their views. Watts reportedly responded: "They always holler at us to get an education. And

now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.... They are not going to make me kill my black brothers." Based on this evidence, the Supreme Court overturned Watts' felony conviction for knowingly and willfully threatening the President. *Watts,* 394 U.S. at 706, 89 S.Ct. at 1401.

threat could not be considered serious because the police did not act on the letter for several weeks. This does not matter. The prosecution need not prove that the defendant had the ability or actually intended to carry out the threat. *United States v. Khorrami*, 895 F.2d 1186, 1192–93.

Moreover, the issue whether the prosecution has shown a "true threat" is a question of fact for the jury, not a question of law for the court. *Id.* at 1192. Given the contents of Melugin's letter, its timing in relation to the Co-op's motion for summary judgment, and Melugin's admission concerning to whom the letter referred, the jury that convicted Melugin had ample evidence to support the conclusion that Melugin's letter was a true threat and that Melugin's conduct fell within the statute. And, as the Alaska Court of Appeals held, the superior court did not err before trial in refusing to find the challenged statute overbroad as applied to Melugin's case.

Rather than relying on *Watts*, Melugin could find greater support for his position in *Wurtz v. Risley*, 719 F.2d 1438 (9th Cir. 1983). In *Wurtz*, this Court held that a Montana statute that punished a threat to commit "any crime" was fatally overbroad because the statute affected a great deal of protected as well as unprotected speech. The distinguishing factor between *Wurtz* and the present case, however, is that in *Wurtz* the Montana Supreme Court imposed no narrowing construction on the statute.

In the present case, the Alaska Court of Appeals narrowly construed AS 11.56.510(a)(1), the statute under which Melugin was convicted, as "proscribing threats of death and physical injury [which] are not, on their face, overbroad." To further emphasize this limitation, the Alaska Court of Appeals noted that the statute would be susceptible to challenge if applied to situations involving protected speech rather than "true threats." A "true threat" is then defined by the court as one which would be reasonably interpreted "as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual]." Thus, the Alaska Court of Appeals interprets the statute at issue as criminalizing only true

threats involving threats of death or physical injury. Such threats are not constitutionally protected speech. *See, e.g., Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969); *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265–66 (9th Cir.1990); *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir.1990); *United States v. Shoulberg*, 895 F.2d 882, 886 (2nd Cir. 1990). In short, we believe that the statutory construction placed by the Alaska Court of Appeals on AS 11.56.510(a)(1) is sufficiently narrow to distinguish the present case from *Wurtz*.

Melugin, however, next contends that the statute impermissibly permits broad ranging prosecution for constitutional as well as unconstitutional communications between parties to litigation and to the court. Melugin argues that the statute "encompasses the myriad requests of litigants which reflect their self-interest, and their descriptions of alternative consequences (motions to compel, motions for sanctions, 'threats' to add charges or claims, appeals)." This challenge must also be rejected.

First, a reading of AS 11.81.900(b)(55) and common sense shows the fallacy of this argument. Under the statute, " 'threat' means a *menace*," which requires some evil or improper act. AS 11.81.900(b)(55) (emphasis added). Thus, typical mid-litigation tactics can be easily distinguished from Melugin's conduct. "Threats" to file a motion for sanctions cannot seriously be deemed "evil" or be compared to death threats to obtain a desired outcome to the litigation. Further, the constitutionally protected tactics delineated by Melugin as possibly falling under the statute do not amount to an "interference" designed to "affect the outcome of an official proceeding" under Alaska law. Thus, the statute under which Melugin was convicted would not criminalize constitutionally protected communications between parties or between a party and the court.

In sum, under the standard laid down in *Hoffman*, Melugin's challenge on the ground of overbreadth must fail. The statute under which Melugin was convicted, as interpreted by the Alaska Court of Appeals, is narrowly

construed so as not to reach "a substantial amount of constitutionally protected conduct." *Hoffman*, 455 U.S. at 494, 102 S.Ct. at 1191.

## 2. Vagueness

■■■■ As noted in *Hoffman*, our inquiry must now turn to the facial vagueness of the statute. Only if the statute is "impermissibly vague in all its applications" should the statute be found void for vagueness. *Hoffman*, 455 U.S. at 495–96, 102 S.Ct. at 1191. If Melugin engaged in conduct that is clearly described in the statute, he cannot complain of the vagueness of the statute as applied to others. *Id.* at 496, 102 S.Ct. at 1191. Moreover, a statute is deemed void for vagueness if it fails to give adequate notice to people of ordinary intelligence of the prohibited conduct. *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

■■■ Melugin argues that the statute, as construed by the Alaska Court of Appeals, is so vague that it fails to give adequate notice of what conduct is prohibited. The thrust of Melugin's argument, both in the Alaska Court of Appeals and before this Court, reiterates the argument discussed below concerning the issue of statutory construction. In short, Melugin contends that because the statute refers in subsections (A), (B), and (C) to jurors and witnesses, a reasonably intelligent person would not understand that the statute could be applied to threats directed at judges.

We reject this argument. Magistrate Judge Roberts stated in his recommendation to the District Court: "Given the nature of the statutory provisions a person of average intelligence would reasonably understand that a veiled threat made to a judicial officer concerning action taken or to be taken in pending litigation would constitute unlawful interference with the official proceedings." Further, the Alaska Court of Appeals stated: "Melugin's implied threat to kill the subjects to whom his letter was addressed falls squarely within the 'hard core of cases to which the ordinary person would doubtlessly know the statute unquestionably applies.'" (Quoting *Stock v. State*, 526 P.2d 3, 9 (Alaska 1974)). Thus, there is no vagueness in the statute as applied to Melugin's conduct.

■■■ Further, Melugin lacks standing to challenge the statute on First Amendment grounds as applied to others. As the Supreme Court in *Hoffman* stated, "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." 455 U.S. at 494–95, 102 S.Ct. at 1191. Therefore, we reject Melugin's contention that the statute under which he was convicted is void for vagueness.

## 3. Statutory Interpretation

Finally, Melugin alleges that the District Court erred in affirming the Alaska Court of Appeals' decision that the statute is intended to apply to Melugin's conduct in sending the threatening letter in September 1987. Specifically relying on sections (A), (B), and (C), Melugin argues that the statute should not be construed as applying to his conduct because the statute only prohibits interference with official proceedings through contact intended to influence jurors and witnesses that is likely to corrupt the decision-making process.

■■■ To support this position, Melugin relies on a principle of statutory construction—*ejusdem generis*. Under this principle:

> where general words follow the enumeration of particular persons or things, the general language is held to apply only to persons or things of the same general nature or kind as those enumerated.... Thus, in a statute forbidding the concealment on one's person of "pistols, revolvers, derringers, or other dangerous weapons," the term "dangerous weapons" may be construed to comprehend only dangerous weapons of the kind enumerated, i.e., firearms, or perhaps more narrowly still, handguns.

*Black's Law Dictionary*, 608 (4th Ed.). Melugin thus claims that subsection (D), the section under which he was convicted, should be read to proscribe threats intended to influence *only* witnesses or jurors.

▆ The plain meaning of the statute, however, does not support Melugin's contention. First, read in isolation, the language of subsection (D) does not contain "general words [which] follow the enumeration of particular persons or things." Nor does subsection (D) act to classify or group the prohibitions in subsections (A), (B), and (C). Subsection (a)(1)(D) on its face criminalizes threats made to *"anyone"* with intent to "otherwise affect the outcome of an official proceeding" *in addition* to those acts described in the earlier subsections.

Next, Melugin argues that the statute should not have been applied to him because it would "criminalize mid-litigation communications to judges which were not intended to affect the outcome" of a case. This contention must also be rejected. In response to the Co-op's motion for summary judgment, the letter threatened death to the opposing parties and a state magistrate unless Melugin received a jury trial—hardly innocuous "mid-litigation communications." The clear intent of the letter was to force Anchorage Superior Court Judge Brian C. Shortell not to dismiss the suit, which certainly would have "affect[ed] the outcome" because the dismissal would have ended Melugin's case.

Finally, it should be noted that the Alaska Court of Appeals rejected these same arguments that Melugin now raises concerning the statute's interpretation and its application to his conduct.[5] The interpretation of AS 11.56.510(a)(1)(D) involves a question of statutory construction, which is a question of state law, as factually applied to Melugin's conduct. As stated above, state court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1988). *See Callazo v. Estelle*, 940 F.2d at 415–16 (9th Cir.1991). Further, this Court must accept a state court ruling on questions of state law. *Jackson v. Ylst*, 921 F.2d at 885. Thus, this Court is bound by the Alaska Court of Appeals' interpretation and decision that the statute as narrowly construed was properly applied to Melugin's conduct.

## CONCLUSION

In sum, Melugin had no constitutional right to threaten another person with physical harm to affect the outcome of his pending civil litigation. We find that there was no error in the District Court's adoption of the Magistrate Judge's recommendation that Alaska's statute criminalizing threats of interference with official proceedings withstands a constitutional challenge under the Alaska Court of Appeals interpretation of the statute under which Melugin was convicted. Alaska has a legitimate interest in protecting all participants in an official proceeding from

**5.** As the Alaska Court of Appeals stated:

> Melugin's argument, however, involves more a problem of statutory construction than of vagueness. The statutory language in question appears unambiguous on its face in proscribing all true threats intended to "otherwise affect the outcome of an official proceeding." In our view, neither the commentary to AS 11.56.510(a) not a contextual reading of subparagraphs (A) through (C) can justify restricting the language "otherwise affect the outcome of an official proceeding" to exclude threats meant to influence dispositive actions by judges, as opposed to jurors or witnesses.
>
> Melugin further contends that the phrase "affect the outcome" is vague in the sense that it might be construed to include the intent to do virtually anything that could have an indirect bearing on an official proceeding. Melugin argues, for example, that in his case he intended only to obtain a hearing for his complaint against the Co-op, and did not intended to influence the manner in which his case would be decided once be obtained a hearing. According to Melugin, his intent to obtain a

> trial should not properly be included with the scope of an intent "to influence the outcome of a proceeding."
>
> We agree with Melugin that the statutory language ... must be construed narrowly. We disagree, however, as to the result a narrow reading would have in Melugin's case. In our view ... the statutory phrase "affect the outcome of an official proceeding" unambiguously requires the state to prove that the defendant's threat was intended to secure or prevent a specific dispositive ruling in the case. Proof of an intent to alter some preliminary or tangential aspect of proceedings that would have no direct tendency to produce a specific, predictable result would not suffice. ... The interference with official proceedings statute, in its narrow form, plainly applied to Melugin's case. The state's theory of prosecution was that Melugin wrote his threatening letter of September 17 with the specific intent to prevent his case from being dismissed. The desire to influence a case by preventing an impending dismissal amounts, in our view, to an intent to influence the outcome of the proceeding.

improper uses of force or threats for the purpose of affecting the outcome of the proceeding.

Melugin's petition for habeas corpus is denied.

CANBY, Circuit Judge, dissenting:

I agree with the majority that the statute under which Melugin was convicted was not unconstitutionally vague, and that it was intended to apply to the type of conduct engaged in by Melugin. I also agree that a jury could properly find that Melugin's communication was a "true threat." Where I differ respectfully from the majority is in the matter of facial overbreadth. In my view, AS § 11.56.510(a)(1), when read in the light of its incorporated definitions in §§ 11.81.900(b)(55) and 11.41.520, is unconstitutionally overbroad on its face. Unlike the majority, I do not believe that the statute was sufficiently narrowed by the Alaska Court of Appeals.

Our key precedent regarding facial overbreadth is *Wurtz v. Risley,* 719 F.2d 1438 (9th Cir.1983). *Wurtz* involved a threat of rape. The governing statute made it a felony to communicate, with the purpose of causing another to perform or omit an act, a threat to perform any of a listed number of acts including a threat to "commit any criminal offense." *Wurtz,* 719 F.2d at 1439 (quoting Mont.Code Ann. § 45–5–203(1)(c) (1981)). We held that the latter phrase rendered the statute fatally overbroad on its face, because it included threats to commit minor victimless crimes. *Id.* at 1442. It would therefore be a felony to threaten an owner of a segregated restaurant with a sit-in, or a boycott. *Id.* We said:

> The state, of course, may punish minor infractions when they actually occur. But to punish as a felony the mere communication of a threat to commit such a minor infraction when the purpose is to induce action—*any* action—by someone, is to chill the kind of "uninhibited, robust, and wide-

open debate on public issues that lies at the core of the first amendment."
*Id.*

The Alaska statutory scheme suffers from the same deficiency, except in worse degree. As the majority opinion points out, § 11.56.510(a)(1)(D) makes it a crime for anyone to "threaten anyone with intent to ... affect the outcome of an official proceeding." A different section defines "threat" as follows: " 'threat' means a menace ... to engage in conduct described in AS 11.41.520(a)(1)–(7) but under AS 11.41.520(a)(1) includes all threats to inflict physical injury on anyone...." By this reference to § 11.41.520(a), which is Alaska's extortion statute, a "threat" includes, among other things, "threatening to:

> (1) inflict physical injury on anyone, ... or commit any other crime;
>
> (2) accuse anyone of crime;
>
> (3) expose confidential information or a secret, whether true or false, tending to subject a person to hatred, contempt or ridicule or to impair the person's credit or business repute;
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (6) testify or provide information or withhold testimony or information with respect to a person's legal claim or defense; or
>
> (7) inflict any other harm which would not benefit the person making the threat or suggestion."

AS § 11.41.520(a).

Subsection (1) virtually duplicates the phrase that led to a finding of unconstitutionality in *Wurtz;* it proscribes a threat to commit "any ... crime." To borrow an example from *Wurtz,* the Alaska statute would "apply to the citizen who tells city council members that if they fail to lower parking fees she will park without putting a coin in the meter." *Wurtz,* 719 F.2d at 1442. It is true that § 11.81.900(b)(55) states that subsection (1) "includes all threats to inflict physical injury on anyone," but that clause does not constitute a *limitation* to threats of physical injury; it simply provides that subsection (1) "includes" all threats of physical injury.[1]

---

1. The apparent purpose of the statement in AS § 11.81.900(b)(55) including "all threats to in-

flict physical injury on anyone" is to negate the exception otherwise applicable in the extortion

Most of the other subsections are equally overbroad. Subsection (2), as Melugin argues, would apply to a spouse's statement that "I will file a criminal complaint against you for beating the children [true] so that the court does not grant custody of the children to you." Subsection (6) would include a threat to a litigant that, if he did not dismiss his case, the speaker would testify on the other side. Subsection (7), as Melugin contends, would apply to a statement that "I'm going to lay off my workers and close my business if you don't dismiss this case against me." [2]

These examples make it clear that the Alaska statute is at least as broad in its definition of "threat" as was the statute in *Wurtz.* It is true that the Alaska statute requires an intent to "otherwise affect the outcome of an official proceeding." The statute in *Wurtz* merely required a purpose "to cause another to perform or omit the performance of any act." In that sense, the Alaska statute is narrower, but not sufficiently so. The number of activities that can be construed as intended to affect the outcome of an undefined "official proceeding" are legion.

The Alaska Court of Appeals did narrow the construction of the "outcome" clause to a degree. In reply to Melugin's vagueness challenge, the Court of Appeals stated that "when applied to the context of a judicial proceeding, the statutory phrase 'affect the outcome of an official proceeding,' unambiguously requires the state to prove that the defendant's threat was intended to secure or prevent a specific dispositive ruling in the case. Proof of intent to alter some preliminary or tangential aspect of proceedings that would have no direct tendency to produce a specific, predictable result would not suffice." *Melugin v. Alaska,* No. A–2596, Mem Op. 14 (Alaska App. May 6, 1992). This interpretation narrows the requisite intent somewhat, but it does not affect the nature of the utterance condemned by the Alaska statutory scheme; a threat of trivial or lawful activity

(such as disclosing a secret) is enough. Moreover, the Court's narrowing construction is confined to the context of a judicial proceeding; no limitations are stated for any other kind of official proceedings. Nor does the requirement of intent to secure a "dispositive ruling" limit the clause substantially. All of the examples given above sought dispositive rulings. Indeed, Melugin's communication itself, which primarily sought a jury trial but could be construed as attempting to avoid a summary judgment, qualified as seeking a "dispositive" ruling.

The Alaska statutes, then, like the statute in *Wurtz,* are so broad in potential application that the overbreadth must be viewed as "not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); *see Wurtz,* 719 F.2d at 1442. For purposes of overbreadth balancing, this case is indistinguishable from *Wurtz.*

The majority opinion concedes that, if the Alaska statutory definition incorporated (as it says it does) all of the types of threats listed in the extortion statute, § 11.41.520(a)(1)–(7), then it might be unconstitutionally overbroad. The majority, however, reads the opinion of the Alaska Court of Appeals in Melugin's case as having narrowed the statute, or at least subsection (1) of the statute, to threats of physical injury or death. If, as the majority states, the Court of Appeals of Alaska had narrowed AS § 11.56.510(a)(1) so that it proscribed only threats of death or physical injury, then I would agree that the statute would not be facially overbroad. With all due respect to the majority, I am unable to find such a narrowing construction in the opinion of the Alaska Court of Appeals.

The reference by the Alaska Court of Appeals to "threats of death and physical injury" came in a general response to Melugin's

---

statute for threats to inflict physical injury "under circumstances constituting robbery in any degree."

**2.** These examples are not rendered invalid by the fact that AS § 11.81.900(b)(55) defines a threat as a "menace." The majority opinion draws

from the word "menace" a requirement of "some evil or improper act." The statute, however, nowhere so defines "menace." The dictionary defines "menace" as a threat. *Webster's Third New International Dictionary* (1976).

argument that the statute, in proscribing threats without any accompanying conduct, prohibited pure speech in violation of the first amendment. The Court responded: "Similar claims have been uniformly rejected in other jurisdictions. Courts have consistently recognized that statutes proscribing threats of death and physical injury are not, on their face, overbroad. [Citations.]" Mem. Op. 8.

I cannot read this passage as a narrowing construction of the Alaska statute. Nor could I square such a narrowing with the next paragraph of the Alaska Court's opinion:

> To decide the facial validity of Alaska's interference with official proceedings statute, we must ask "whether the net effect of the statutory scheme is to do more good in advancing governmental interests than harm to first amendment interests." Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844, 911–12 (1970). *See also City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2180, 80 L.Ed.2d 772 (1984). Here, the state has a strong and legitimate interest in preserving the integrity of its judicial processes against interference through threat and intimidation. This interest easily outweighs the marginal risk that the statutory language might, in peculiar situations, extend to legitimate speech. Because the balance clearly preponderates in favor of the state's interest in protecting against interference with official proceedings, we follow established precedent in holding that the challenged statute is not invalid on its face.

Mem. Op. 8–9. If the Court of Appeals had, in the prior paragraph or anywhere else in its opinion, narrowed the statute to apply only to threats of death or physical injury, it would have been nonsensical for the Court then to proceed to weigh the state's legitimate interest against the possibility that the statute might "extend to legitimate speech." In my view, the Court of Appeals recognized that it was dealing with a statute containing a broad and multiple definition of "threat" but it thought that the benefits of the statute outweighed the potential damage to first amendment interests. The process of balancing was legitimate, but the result squarely conflicts with *Wurtz.*

I conclude, therefore, that the provision of AS § 11.56.510(a)(1)(D) that proscribes "threats," as further defined in AS § 11.81.900(b)(55) and AS § 11.41.520, with intent to "otherwise affect the outcome of an official proceeding" is unconstitutionally overbroad. I would reverse Melugin's conviction of that offense.