**Opinion issued February 10, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00020-CR**

———————————

**SAMSON PEREZ CASIANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1178978**

---

**O P I N I O N**

A jury found Samson Perez Casiano guilty of the offense of aggravated sexual assault of a child. After he pleaded true to a prior offense, the trial court sentenced Casiano to thirty years' confinement. On appeal, he contends that he

was deprived of constitutionally effective assistance of counsel. We conclude that Casiano has failed to show ineffective representation; we therefore affirm.

## Background

In 2004, J.A., the complainant, lived with her mother and her mother's husband. In October of that year, J.A.'s mother and her husband celebrated their anniversary at a hotel. J.A. stayed at home with Samson Casiano, the appellant, and Casiano's son. J.A., who was 12 years old at the time, testified that she was lying on her bed in her room. Casiano entered her room and closed the door. He approached J.A. and put his arm across her back, holding her down with force, whereupon he pulled down J.A.'s basketball shorts, pulled out his penis, and inserted it into J.A.'s anus. J.A. testified that it "hurt like hell." Casiano warned J.A. not to tell anyone else what happened. Casiano attempted a similar assault on a later occasion, but his son entered the room as it was happening; Casiano stopped the assault and angrily left.

J.A. did not inform her mother about the assaults. A few years later, when J.A. was living with her father, he overheard J.A. telling a friend on the phone about the sexual assaults. J.A.'s father asked J.A. about the conversation, and she revealed the assaults to him. Susan Odhiambo, a forensic interviewer with the Children's Assessment Center, interviewed J.A. during a Child Protective Services investigation.

*Course of Proceedings*

After the trial, in November 2009, Casiano moved for a new trial, contending that jurors had committed misconduct by considering testimony in their deliberations that the trial court had instructed them not to consider. Casiano further contended that jurors had concluded improperly that complainant's video interview with Odhiambo would have demonstrated Casiano's guilt had they been allowed to view it. The trial court denied the motion without a hearing.

In April 2010, Casiano untimely noticed his appeal. We determined that we lacked appellate jurisdiction over the case due to the late notice. After Casiano filed a writ of habeas corpus, the Court of Criminal Appeals granted Casiano leave to file an out-of-time appeal. We thus consider the merits of his appeal.

## Discussion

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient; and (2) a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Trial counsel in this case was retained rather than appointed, but the *Strickland* test applies to retained, as well as appointed, counsel. *See Ex parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344–45, 100 S. Ct. 1708

(1980)) ("[W]e see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers."). The first prong of *Strickland* requires a showing that counsel's performance fell below an objective standard of reasonableness, in that counsel made such serious errors that he was not functioning effectively as counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 142. Thus, the defendant must prove objectively, by a preponderance of the evidence, that his counsel's representation fell below professional standards. *Lopez*, 343 S.W.3d at 142; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is not available, we will assume that counsel's strategy was reasonable if any reasonably sound strategy can be imagined. *Lopez*, 343 S.W.3d at 143; *see also Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

*Analysis*

Casiano contends that his trial counsel was ineffective because (1) he did not pursue his successful objection in response to a State witness's testimony by moving for a mistrial; (2) counsel did not challenge this witness's qualifications, reliability, and relevance; and (3) counsel moved for a new trial based on improper

4

jury deliberations but did not acquire and attach juror affidavits or his co-counsel's affidavit to the motion. Casiano further contends that counsel's individual actions, when viewed together, demonstrate that counsel's overall performance was deficient.

1. Pursuit of a Mistrial

In evaluating Casiano's challenges, we first note that a trial counsel's failure to move for a mistrial is only an act of ineffective assistance if a mistrial should have been granted. *Thomas v. State*, 445 S.W.3d 201, 210 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Weinn v. State*, 281 S.W.3d 633, 641 (Tex. App.—Amarillo 2009), *aff'd on other grounds*, 326 S.W.3d 189 (Tex. Crim. App. 2010)). In evaluating the propriety of a mistrial, we consider: (1) the severity of the misconduct; (2) the measures adopted to cure it; and (3) the certainty of conviction in its absence. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). A mistrial is an extreme remedy "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because jurors are presumed to follow a judge's instructions, an appropriate instruction generally is sufficient to cure improprieties that occur during a trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

During this trial, the State elicited testimony from Odhiambo about whether J.A.'s demeanor at her interview was consistent with a child who had been

5

sexually abused. The trial judge sustained an objection to this question and instructed the jury to disregard this testimony sua sponte:

> State's trial counsel: You can't tell me what she said in the interview, obviously, because that's hearsay. How would you describe her demeanor when you talked to her?
>
> Odhiambo: [J.A.] appeared to be very angry about all of the things that have happened to her.
>
> State's trial counsel: Okay. And that was the general impression you got overall from talking to her?
>
> Odhiambo: Yes.
>
> State's trial counsel: Okay. And of course, when you talked to her, aside from being able to observe that she was angry, I'm guessing you found out a lot about the circumstances of her case, correct?
>
> Odhiambo: Correct.
>
> State's trial counsel: And from having done 4,000 or 4,000 plus interviews, the anger that she — that she exhibited during her interview with you, was that consistent for someone in her situation who had been sexually abused?
>
> Casiano's trial counsel: Your Honor, can we approach the Bench, please.
>
> The Court: If that's an objection, that's sustained.
>
> Odhiambo: Yes.
>
> The Court: The jury is instructed to disregard that answer.

At a follow-up bench conference, the trial court admonished counsel:

> . . . She can't give her opinion about whether she thinks this child was abused or not abused. . . . So, by you asking her these questions, you're implying that she believed her or that[] it's consistent behavior that she was angry when she came. You can ask her if she was angry, but you can't ask

6

her the follow-up question: Was that consistent with being abused? . . . You can't put that tape in about what she said. . . . you're getting around that by asking her what her impression[] was.

We conclude that Casiano's counsel was not ineffective in not moving for a mistrial. The response at issue was brief and stated once. *See Archie*, 340 S.W.3d at 739–41 (examining the severity of misconduct). The trial judge instructed the jury to disregard the testimony and conducted a bench conference to avoid any further improper testimony. *See id.* (examining measures taken by court to cure misconduct). The trial judge's measures were sufficient to cure the improper testimony. *See Gamboa*, 296 S.W.3d at 580. Thus, counsel's decision to refrain from requesting a mistrial was not ineffective assistance.

2. Expert Witness Challenge

Casiano next contends that his trial counsel was ineffective in failing to challenge Odhiambo's qualifications, as well as the reliability and relevance of her testimony. The State responds that Odhiambo did not proffer any expert testimony; thus, no challenge was necessary. We agree.

Odhiambo testified that she had conducted thousands of forensic interviews and had received training to become a forensic interviewer. She testified about her educational degrees and experience as an interviewer. While Odhiambo interviewed J.A., Odhiambo recounted, J.A. appeared angry. Although the State also attempted to elicit testimony about the emotional reactions of abused children

in general, Casiano's counsel objected to relevance of this questioning, and the trial court sustained the objections.

> State's counsel: [I]n the 4,000 interviews that you've done, do all kids react the same?
>
> Odhiambo: No, they don't.
>
> State's counsel: What are some of the things that different kids do?
>
> Odhiambo: You have a whole range of emotions.
>
> Casiano's counsel: Your Honor, I would object to the relevance in this case.
>
> The Court: Sustained.
>
> . . .
>
> State's counsel: Have you seen some kids cry?
>
> Odhiambo: Yes, I have.
>
> State's counsel: Have you seen other kids that are angry?
>
> Casiano's counsel: Your Honor, same objections.
>
> The Court: You know, you need to approach the Bench. I was wondering, when you called her, what your purpose of calling her was. . . . You can ask her if she was angry, but you can't ask her the follow-up question: Was that consistent with being abused?

Although Casiano's counsel did not object to Odhiambo's qualifications or reliability, Odhiambo's testimony was limited to the fact that J.A. was angry during her interview. She did not proffer any expert opinion. Thus, trial counsel reasonably could have decided that eliciting Odhiambo's testimony on her

8

qualifications—an issue beyond the scope of her direct testimony—would not have furthered Casiano's defense. Counsel's reasons for his actions do not appear in the record; given the limited nature of the testimony, counsel's actions could have been part of a reasonable trial strategy. *See Lopez*, 343 S.W.3d at 143. Accordingly, Casiano has not met his burden to show that counsel's performance was deficient. *See id.* at 142.

### 3. Jury Misconduct

Casiano next contends that his trial counsel failed to effectively demonstrate juror misconduct. Texas Rule of Evidence 606(b) prohibits post-verdict testimony about events or statements that occurred during jury deliberations, the jurors' mental processes, or how an improper influence affected the jurors. TEX. R. EVID. 606(b); *Colyer v. State*, 428 S.W.3d 117, 123 (Tex. Crim. App. 2014). It also prohibits such evidence by affidavit. TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 124. Rule 606(b), however, does not prohibit all juror testimony. *Id*. When an outside influence improperly is brought to bear on a particular juror, a juror may testify about it. TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 124–25. An outside influence includes a discussion "originating from a source outside of the jury room and other than from the jurors themselves." *Colyer*, 428 S.W.3d at 125 (quoting *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012)). Even if a juror testifies to an improper outside influence, that juror may not testify about the effect

that the information had on the jury; instead, we evaluate the effect of the improper influence on a hypothetical average juror. *Id.* at 129.

Casiano's trial counsel provided the trial court with an affidavit, in which trial counsel averred that his co-counsel had reported a post-verdict conversation with a juror. The juror reportedly told co-counsel that the jurors had reached their verdict by considering that: (1) complainant's video testimony would have established Casiano's guilt had counsel not kept the testimony out of evidence, and (2) Odhiambo's testimony showed J.A.'s demeanor was consistent with a child who had been abused, even though the trial court had instructed the jury to disregard it.

Casiano, however, does not demonstrate that a juror affidavit along these lines was available to support his motion for new trial or the hearsay statements of co-counsel. In claims of ineffective assistance of counsel, the record must affirmatively demonstrate counsel's deficiency. *See Lopez*, 343 S.W.3d at 142. Nothing in the record supports a finding that trial counsel would have been able to procure a juror affidavit swearing to these facts as presented in the motion for new trial. *See Bone v. State*, 77 S.W.3d 828, 834–35 (Tex. Crim. App. 2002) ("If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence. Ineffective assistance of counsel claims are not build on retrospective

10

speculation; they must 'be firmly founded in the record.'") (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In addition, Rule 606(b) prohibits juror testimony or affidavits regarding jury deliberations, juror mental processes, or how an improper influence affected jurors. *See* TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 123–24. Even if an outside influence is brought to bear on a juror, a juror is prohibited from testifying about the effect of the influence on him. *See Colyer*, 428 S.W.3d at 129. Through his motion for new trial, counsel sought to examine the juror's internal deliberations, not the existence of any improper outside influence. Such evidence, even if it had been obtained, would not present a basis for a new trial based on juror misconduct. *See id.* at 123. Casiano also makes no showing that the jury was subject to an improper outside influence that would affect a reasonable jury, in light of the evidence that was presented. Accordingly, we hold that Casiano has not met his burden to show that his trial counsel was ineffective in moving for a new trial without attaching a juror affidavit or a co-counsel affidavit. *See Lopez*, 343 S.W.3d at 142.

4. Totality of the Representation

Finally, Casiano contends that counsel's individual actions, when viewed together, demonstrate that counsel's overall performance was deficient. In *Bone v. State*, the Court of Criminal Appeals held that, because counsel's errors viewed

11

individually did not demonstrate a reasonable probability that the result would have been different, then they did not demonstrate ineffectiveness in its totality. 77 S.W.3d at 836 ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent."). Because we conclude that none of Casiano's claimed individual errors amounted to ineffective assistance, we likewise hold that Casiano has not met his burden to show that his trial counsel was ineffective in his overall performance.

## Conclusion

We hold that Casiano has not borne his burden to rebut the presumption that trial counsel made all significant decisions in the exercise of his reasonable professional judgment. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. *See* TEX. R. APP. P. 47.2(b).

12