**UNITED STATES of America, Appellee,**

v.

**Anton GROVES, Appellant.**

**No. 90–2089.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1991.

Decided Aug. 8, 1991.

John R. Cullom, Kansas City, Mo., for appellant.

Peter M. Ossorio, Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, ROSS, Senior Circuit Judge, and HANSON,* Senior District Judge.

ROSS, Senior Circuit Judge.

Anton Groves (Groves) appeals his conviction of one count of conspiracy to distribute crack cocaine and one count of distribution of crack cocaine. We affirm.

On July 25 and 27, 1989, the Kansas City Police Department arranged for two "controlled buys" between a government informant and a suspected cocaine dealer, Stacey Thomas (an ex-police officer). Four men were present at both buys: the informant, appellant Groves, Thomas, and Darryl Nimrod (Thomas' cousin). Both buys

took place at Thomas' house in his bedroom and on both occasions the informant purchased five ounces of crack for $4,500. The informant wore a tape recorder on both occasions. However, Groves' voice was not on the taped recordings because he did not speak during either of the buys.

After the second controlled buy, police officers saw Nimrod and an unidentified black male passenger leaving Thomas' house in a blue Dodge van. The officers were unable to stop the van, but they did note that it had a distinctive custom paint job and was missing a front license plate. Thomas was arrested after the second buy. He gave a mirandized statement implicating Groves and Nimrod in the transactions and further told the police where Nimrod lived. The police obtained a search warrant for Nimrod's apartment. When they arrived, they found a van which fit the description of the van which was seen leaving Thomas' house after the second buy. The van was registered to a Terry Ricardo Groves.

At Groves' trial, Thomas testified that on either July 25 or 27, Groves produced a brown paper bag containing crack ("On one day Tony [Groves] pulled out the brown bag [containing the crack cocaine]."). Thomas also testified that on July 27, although Thomas did not know if Groves and Nimrod were riding together, they showed up at Thomas' house together. The informant testified that Groves was present in Thomas' bedroom during the July 25 and the July 27 transactions.[1] The informant stated that on both occasions, he went to Thomas' house, did not see Groves or Nimrod, met with Thomas and then left. Later the informant returned to Thomas' house where Nimrod and Groves were then present. Only after Nimrod and Groves were there did they all four go up to the bedroom, away from the other people in the house, to complete the drug sales.

Groves claims that his "mere presence" during the drug sales is insufficient

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. However, the informant contradicted Thomas' testimony that Groves had produced the brown paper bag containing the crack.

**666**

to support his conviction of conspiracy. However, we are required to view the evidence in the light most favorable to the government and also to accept all reasonable inferences from the evidence which tends to support the guilty verdict. *United States v. Hernandez*, 913 F.2d 568, 569 (8th Cir.1990). Here, the evidence supports the verdict that there was a drug conspiracy and that Groves was part of it. According to the informant and Thomas, sales of crack took place on July 25 and 27 in Thomas' bedroom where five ounces of crack were exchanged for $4,500. Both Thomas and the informant stated that Groves was present during both transactions. Thomas further testified that on one of those days, Groves produced the brown paper bag which contained the crack. Thomas' testimony was also supported by the testimony of Detective Starbuck, the officer who talked with Thomas the night of his arrest. Detective Starbuck confirmed that Thomas, not the police, brought up Groves' involvement and that Thomas had specifically stated that on July 25, Groves came to Thomas' house with five ounces of crack cocaine.

The jury apparently credited all of this testimony. Although Groves may have played only a small part in the conspiracy, this court has held that "[o]nce a conspiracy was proved, even slight evidence connecting [the defendant] to the conspiracy would be sufficient to support his conviction." *United States v. Foote*, 898 F.2d 659, 663 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). Furthermore, the court gave a "mere presence" instruction to the jury. Therefore, the jury was able to consider Groves' "mere presence" theory, just as it was able to consider the government's conspiracy theory.

■ Groves also objects to the evidence connecting him with the blue van. At trial, the government introduced, through its witness, Sergeant John McEntee, a document from the Missouri License Bureau which indicated that the blue van was registered to Terry Ricardo Groves. On cross examination, McEntee admitted that he did not know whether Terry Groves was any relation to the defendant Anton Groves or whether Anton Groves had ever had any access to the van. Further, the government stipulated that there was no evidence that Anton Groves had ever used the name Terry Groves.

Groves claims that the van-related evidence unfairly prejudiced him in the eyes of the jury because no drugs, money or guns were found in the van. Furthermore, when McEntee was asked by the prosecutor what preparation McEntee had done for trial, McEntee stated: "I tried to subpoena a Terry Groves and I also obtained a printout." The contents of the printout were not placed before the jury.

The government contends that any prejudice was cured by the court's instruction to the jury that the jury could consider as a fact that the government had no evidence that Groves had ever gone by the name Terry Groves. We agree with the government. Here, the jury had before it evidence that a blue van with a custom paint job and no front license plate was seen leaving the scene of the second crack purchase. This description matched the description of the van seen at Nimrod's apartment after the second crack purchase. Also, there was evidence that Nimrod was seen riding with a black male passenger. In addition, there was testimony from which it could be inferred that Nimrod and Groves arrived at Thomas' house at the same time. On the other hand, the jury also had before it evidence that Sergeant McEntee had no idea if Groves had access to the van or if Groves was related to Terry Groves. The court also instructed the jury that the government had no evidence that Groves had ever used the name Terry Groves.

Taking all this into consideration, we cannot say that the district court abused its discretion in admitting the evidence regarding the blue van. *See United States v. Foote, supra*, 898 F.2d at 665.

For the foregoing reasons, we affirm.