UNITED STATES of America, Appellee,

v.

Myron R. TALLMAN, Appellant.

UNITED STATES of America, Appellee,

v.

Cynthia K. GREEN, Appellant.

Nos. 90–2131, 90–2132.

United States Court of Appeals,
Eighth Circuit.

Submitted June 19, 1991.

Decided Dec. 6, 1991.

Rehearing Denied Jan. 28, 1992 in
No. 90–2132.

Peter K. Blakeslee, Lincoln, Neb., argued, for appellant Myron R. Tallman.

John Stevens Berry, Lincoln, Neb., argued, for appellant Cynthia K. Green.

Bruce Gillan, Lincoln, Neb., argued (Ronald D. Lahners and Bruce W. Gillan, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Myron R. Tallman and Cynthia K. Green appeal from their convictions on several drug-related counts.

## I.

Tallman and Green, his girlfriend, suspected of dealing in cocaine, became the targets of a police investigation that began in 1987 in Lincoln, Nebraska. By March of 1989, investigators had compiled enough information to support a court order authorizing a wire tap of telephone calls to and from Tallman and Green's apartment. On July 15, 1989, Tallman and Ronald Bergantzel, one of his associates, were arrested. Ultimately, Green, Merle Vermuele (her brother), Vincent Handy, and Terry Taylor Wentworth were also arrested. Bergantzel, Vermuele, Handy, and Wentworth entered into plea agreements and agreed to cooperate with the government. Tallman and Green were convicted of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and four counts of delivery of, or possession with intent to deliver cocaine in violation of 21 U.S.C. § 841(a)(1).

## II.

When this case was argued before us on January 10, 1991, we considered Tallman and Green's contention that the late-discovered existence of pretrial statements of certain witnesses against them entitled them to a new trial. During argument the government acknowledged that the three police reports in question should have been turned over to Tallman and Green at trial, but maintained that the nondisclosure of the reports did not mandate a reversal of the convictions. In light of the government's concession, we remanded the case to the district court [1] to review the pretrial statements of Bergantzel and Vermuele and to determine whether the result of the proceeding would have been different had the evidence been disclosed to the defense. After a thorough, comprehensive review of

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

the evidence, the district court concluded that the result of the trial would not have been different had the police reports been disclosed to Tallman and Green. Having carefully reviewed the record, we find no error in the district court's findings on this issue.

### III.

■ Appellants contend that the wire tap was authorized without probable cause and thus was in violation of the wiretap statute, 18 U.S.C. § 2510 *et seq.* We disagree. The affidavit submitted in support of the application for the wire tap order was some sixty pages in length, detailing already-completed drug deals between Tallman and his associates that were observed or conducted by police. Appellants argue that the information set forth in the affidavit was stale. The investigation of this drug conspiracy began on April 1, 1987. The last drug transaction that was observed occurred on November 1, 1988. The application for the wiretap authorization was presented to the Lancaster County District Court on March 17, 1989. Notwithstanding this delay, however, we conclude that the on-going nature of the conspiracy was sufficiently established by the affidavit to support the finding that probable cause existed for the issuance of the wiretap authorization. *See United States v. Jones,* 801 F.2d 304 (8th Cir.1986).

Likewise, we conclude that when read in a practical and common sense fashion, *United States v. Garcia,* 785 F.2d 214, 221 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986), the affidavit satisfied the requirement of 18 U.S.C. § 2518(3)(c) that the issuing judicial officer be able to determine from the application that normal investigative procedures had been tried and had failed and that it reasonably appeared that such procedures would be unlikely to succeed if tried.

### IV.

■ The jury retired to begin its deliberations at 3:50 p.m., February 27, 1990. On the morning of March 1, 1990, the district court was given a note from one of the jurors stating that the juror believed that the court's instructions regarding jury deliberations were not being followed. Specifically, the note complained that as each of the counts of the indictment was being voted on, the juror in the minority was being questioned and forced to defend his position on that vote. The note characterized the majority's actions as constituting harassment and insults.

After discussing the note with counsel, the district court instructed the jury to reread the earlier-given instruction regarding the jury's duty to deliberate. The court then gave a supplemental instruction regarding the jury's right to agree upon a verdict as to one defendant but not as to the other.

In denying Tallman's motion for new trial based upon the assertions contained in the above-described note, the district court observed:

> I am not persuaded that the jury's verdict should be overturned because of the assertions in the note handed me and revealed to counsel during deliberations. There may well have been disagreements in the jury room about the correctness of the procedure being followed and there may have been unkind words said by one or more jurors to one or more others. That, rather than total placidity, is more nearly the nature of jury deliberation. At the announcement of the verdict the jurors were polled and each separately declared that the verdict as rendered was in agreement with that juror's decision. I am satisfied that the ultimate test is and must be the unanimity of the jurors' views. That was registered in the final verdict and there is no cause for overturning it.

We concur in the district court's reasoning and holding. As we recently held, Federal Rule of Evidence 606(b) prohibits the use of statements from jurors that they felt pressure to reach a verdict. *United States v. Thomas,* 946 F.2d 73 (8th Cir. 1991). The holding in *Thomas* is in accord with our earlier decisions that narrowly limit the type of evidence that is admissible under Rule 606(b) to overturn a verdict on

the grounds of jury misconduct. *See, e.g., United States v. Krall,* 835 F.2d 711, 715–16 (8th Cir.1987). We view the note in question as reflecting nothing more than a disagreement by one juror about the manner in which the other jurors were voicing their opinions and then calling upon him to voice and defend his views regarding each of the counts. As well put by the district court, total placidity is not the nature of jury deliberation. To admit proof of contentiousness and conflict to impeach a verdict under Rule 606(b) would be to eviscerate the rule. The district court correctly refused to follow that course here.

Appellants' other contentions regarding alleged improprieties during the jury's deliberations are without merit.

## V.

■ Green challenges the sufficiency of the evidence to support her conviction on the conspiracy count. Having carefully reviewed the record, we conclude that her contention is without merit. True, Green's participation in the scheme to distribute cocaine was not nearly so extensive as Tallman's, but a "defendant may be found guilty if he only plays a minor role in the total scheme." *United States v. Lee,* 743 F.2d 1240, 1250 (8th Cir.1984). Once a conspiracy has been proved, even slight evidence connecting a defendant to the conspiracy is sufficient to support his conviction. *United States v. Groves,* 941 F.2d 664, 666 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 405, 116 L.Ed.2d 353 (1991); *United States v. Foote,* 898 F.2d 659, 669 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). Without recounting the evidence against Green, we are satisfied that when viewed in the light most favorable to the government, and giving the government the benefit of all reasonable inferences, the evidence was of sufficient force that it cannot be said that a rational jury could not have found the elements of the conspiracy count to have been proved beyond a reasonable doubt. *United States v. Dyer,* 910 F.2d 530, 531–32 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990).

## VI.

There remains the question of the sufficiency of the evidence to support the enhancement of Tallman's sentence for obstruction of justice under U.S.S.G. § 3C1.1.

In imposing the section 3C1.1 enhancement, the district court found that Tallman "threatened to have anyone shot who would be a cooperating individual with the government. And asked Mr. Bergantzel to find somebody who would be in a position to carry that out. It was not an innocent or frivolous statement." This finding was based on Ronald Bergantzel's testimony at a pretrial detention hearing on July 24, 1989, that during conversations between himself and Tallman prior to their arrest, Tallman and Bergantzel

> had discussed that if somebody had snitched us off he would care to employ the services of somebody to harm somebody that might be the snitch, sir.

Q. The second conversation occurred when?

A. Prior to my arrest, approximately two weeks, sir. Within the two weeks before.

\* \* \* \* \* \*

Q. Tell us about that conversation.

A. The conversation was pretty much the same as the previous one except he inquired if I had located someone to do these services. And there was also a monetary value exchanged at that time.

Q. Now, who raised the idea of a specific amount of money?

A. I did, sir. Because I needed to know what I had to work with if I needed, if I was to do that, sir.

Bergantzel characterized these conversations as "table talk," although he described Tallman as being upset during both conversations.

The tape recording of an intercepted telephone conversation between Tallman and Merle Vermuele on June 30, 1989, revealed the following conversation:

> *Vermuele:* That dumb fucker. I don't think that he realizes what the fuck he

put himself into. Find that dumb fucker over in a ditch someplace

*Tallman:* That's right. Tell you what if I start gettin heat, I'll get (inaudible) I mean I can afford to shut down, that ain't, that ain't the fuckin deal, but there's gonna be some repercussions on that mother fucker ... shotgun blowing the fuckin windows and shit, I ain't fuckin around. The fucker, the way I look at it Merle, if they put your fuckin life style in jeopardy

*Vermuele:* Well yea

*Tallman:* It's time to be fuckin with their's

■ The obstruction enhancement applies to attempts to deceive authorities or to obstruct their investigative efforts before imposition of formal criminal charges. *United States v. Werlinger,* 894 F.2d 1015, 1016 (8th Cir.1990). Tallman argues that Bergantzel's testimony was not sufficiently credible to support a finding that Tallman had asked Bergantzel to hire someone to harm a "snitch." He cites Application Note 2 to section 3C1.1, which states that "suspect testimony and statements should be evaluated in a light most favorable to the defendant."[2] We gave effect to this directive in *United States v. Shortt,* 919 F.2d 1325 (8th Cir.1990), where we upheld the district court's decision not to impose an enhancement for obstruction of justice, notwithstanding substantial evidence that Shortt, when questioned by authorities, had falsely denied purchasing a device capable of detonating a bomb.

■ We agree with the government that Application Note 2 should not be held to stand for the proposition that a mere denial by a defendant precludes a finding contrary to the defendant's position. We adopt the Fifth Circuit's view of how Application Note 2 is to be construed:

We do not believe that this note requires the sentencing judge to believe the defendant whenever he denies that he hid evidence, or shot at witnesses. To construe the note in that way would effectively enable every defendant to nullify its application by self-serving testimony. Instead, we believe the note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction. Such uncertainties may arise when the judge is unsure about which witness to believe, or when the prosecution has failed to procure available evidence crucial to resolution of a controversy.

*United States v. Franco–Torres,* 869 F.2d 797, 801 (5th Cir.1989).

Other circuits have adopted a similar approach. In *United States v. Shoulberg,* 895 F.2d 882 (2d Cir.1990), authorities intercepted a note from Shoulberg to Hamsho, a co-defendant. The note requested the address of a prospective witness, Penna, and included the statement "[i]f he is fucking I got a trick for his ass." *Id.* at 883. Shoulberg maintained that the note merely expressed an inchoate thought, or was at most ambiguous. Since Application Note 2 required that the note be construed in his favor, he argued, the court could not find the note to be a threat. The court rejected this analysis, stating:

[Application Note 2] does not preclude a finding of a threat any time the defendant can conjure up some conceivable alternative explanation for his words. The sentencing court remains the finder of fact and may draw all reasonable inferences from the words used and from the pertinent circumstances. The inference that Shoulberg meant that physical violence would be used as a preventive measure against Penna if Penna were otherwise inclined to cooperate, and the inference that Hamsho and Penna would so interpret it, were plainly permissible and may not be disturbed on appeal.

*Id.* at 885. The court then held that, as a matter of law, passing the note constituted an attempt to obstruct justice.

In *United States v. Sabatino,* 943 F.2d 94 (1st Cir.1991), a defendant made thinly-veiled threats to two witnesses. The First

---

**2.** U.S.S.G. § 3C1.1 was amended effective November 1, 1990. The quoted portion now appears in Note 1, and refers to "the defendant's testimony" rather than "suspect testimony."

Circuit held that the district court could construe the statements as threats even though the defendant offered an alternative interpretation. *Id.* at 100. The court rejected defendant's argument that Application Note 2 required a different result, and concluded that the Note's purpose was only to protect a defendant's right to deny guilt without necessarily facing a perjury charge. *Id.* at 101.

■ Application Note 2 does not prohibit a sentencing court from evaluating a defendant's statements in light of the relevant circumstances and from then rejecting his version of events. The district court therefore remained free to reject Bergantzel's characterization of his conversations with Tallman. If any doubt persisted regarding the seriousness of Tallman's intention to obstruct the investigation, it surely was dispelled by Tallman's having given money to Bergantzel to hire an assassin and by the tenor and substance of Tallman's telephone conversation with Vermuele on June 30, 1989. Accordingly, we hold that the district court did not err in enhancing Tallman's sentence under section 3C1.1.

We have considered Tallman's contention that the district court erred in calculating his base offense level and find that it is without merit.

The convictions and the sentences entered thereon are affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I would grant defendants a new trial. The Government deprived defense counsel of the best weapons it could have used to impeach the truthfulness of the Government's witnesses, Ronald Bergantzel and Merle Vermuele. This result followed from the withholding of police reports summarizing statements made by those witnesses which contradicted their trial testimony. Because attacking the testimony of those witnesses would have materially affected the outcome of Tallman and Green's trial, *see Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), I dissent from this court's decision affirming their convictions.

Ronald Bergantzel provided the Government with its sole source of information on many aspects of Tallman and Green's drug trafficking activities. Bergantzel alone testified that Tallman bought and sold massive amounts of cocaine, providing evidence that would serve as the basis for Tallman's nineteen-year sentence and Green's eight-year sentence. Vermuele also testified that he purchased cocaine from both Green and Tallman and sold cocaine that he bought from Tallman to law enforcement officers.

The Government admits that it improperly withheld reports of statements by Bergantzel and Vermuele to police. Those reports show that, when first questioned by police, they denied any involvement in drug trafficking. The existence and admission of that evidence would have presented two alternative choices for the jury. If what Bergantzel and Vermuele had told police was true, then they lied under oath in testifying to the contrary. If their trial testimony, detailing extensive involvement in drug trafficking with Tallman and Green, was true, then they gave false statements to police officers when first questioned. Either way, this evidence proved that the witnesses lied; that they were unreliable witnesses who changed their stories and implicated their friends in drug activities to avoid long prison sentences for themselves. The jury, and not the district court, should have decided whether those witnesses were credible.

Although Tallman's counsel ably cross-examined Bergantzel, counsel did not possess evidence discrediting Bergantzel's truthfulness. Counsel pointed to ambiguities in Bergantzel's memory of the facts, to the benefit Bergantzel received for cooperating with the Government and that Bergantzel was in jail at the time of trial because he had tested positive for marijuana in violation of his probation, IV Tr. at 532. However, defense counsel possessed no evidence that Bergantzel at one time had told police a different story than the one he told on the stand. The suppressed evidence, vital to impeachment, was not cumulative. *Cf. United States v. Roberts,*

848 F.2d 906, 908 (8th Cir.) (holding withheld evidence not material when counsel effectively cross-examined without withheld evidence, or when withheld evidence was cumulative), *cert. denied,* 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988).

The district court determined that the Government submitted ample evidence implicating Tallman and Green, making Bergantzel's and Vermuele's testimony not material to the outcome of the trial. Specifically, the district court found that tapes of conversations between the defendants discussing drug dealing, physical evidence found at Tallman's apartment (large amounts of cash, guns and cocaine) and testimony of other witnesses proved beyond a reasonable doubt that Tallman and Green were guilty of the crimes for which they were convicted.

For the jury to convict Tallman of the crimes charged, it needed to find Bergantzel's version of the facts credible. The jury found Tallman guilty of counts I, V, VI, VII and VIII, and Green guilty of counts I, V, VI and VII. Other evidence at trial, besides Bergantzel's and Vermuele's testimony, corroborated count I, which involved Tallman and Green conspiring to distribute cocaine, and count VIII, which related to Tallman possessing cocaine with intent to distribute.

The jury also found Tallman and Green guilty on counts V, VI and VII, relating to sales to undercover agents of cocaine by Terri Langston and Vincent Handy. Handy, who sold cocaine to an undercover agent, testified that he purchased his cocaine from Bergantzel, II Tr. at 232–34; III Tr. at 235–55. Bergantzel identified Tallman as his sole supplier of cocaine. III Tr. at 321–25. Bergantzel never identified the supplier to Handy, referring to the supplier only as "Milk and Toast." III Tr. at 255–56. Only Bergantzel's testimony connects Tallman and Green to Handy's sales of

drugs to an undercover agent. If the jury discredited Bergantzel as a witness, the jury might have determined the evidence insufficient to establish Tallman as the sole supplier of cocaine to Bergantzel.[3] The issue of Bergantzel's credibility became very material to Tallman's and Green's convictions on counts V, VI and VII.

Despite defense counsel's inability to impeach Bergantzel and Vermuele and the existence of other evidence of drug dealing by defendants, the jury apparently believed this to be a close case, acquitting Tallman of two charges and acquitting Green of three charges. The jury deliberated for several days, asked the district court for assistance on numerous occasions and sent the district court a note indicating that some jurors were harassing a juror with a minority opinion. At one point during the course of deliberations, the district court remarked "counsel have rightly indicated that there are indicia of the jury's [sic] having difficulty arriving at a decision." IV Tr. at 950.

As Justice Blackmun has noted, a reasonable probability is one that would "undermine confidence in the outcome" of the proceeding. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). In light of this evidence discrediting the Government's main witness, we cannot be confident that the jury would have convicted.

Impeachment evidence also becomes material under *Brady* if it discredits testimony crucial to a defendant's sentence. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987). Only Bergantzel's testimony connects Tallman and Green to at least five kilograms of cocaine, resulting in Tallman's nineteen-year sentence and Green's eight-year sentence under the Guidelines. Although others testified to seeing Tallman handling kilos of cocaine, Bergantzel's testimony

---

**3.** This is not to say that no other evidence ties Tallman to the cocaine purchased by Handy. Terri Wentworth testified that Bergantzel referred to Tallman as "Milk and Toast," IV Tr. at 773, and Bergantzel told Handy that his source had that name. Also, the cocaine that Bergantzel gave Handy was packaged in the same manner that Wentworth testified that Tallman packaged his cocaine, wrapped in folded magazine paper and placed in a plastic bag, IV Tr. at 748. This circumstantial evidence does not foreclose the possibility that Bergantzel testified falsely about Tallman being his sole supplier.

provides the sole basis for connecting Tallman to five kilos. If defense counsel could have confronted Bergantzel and effectively impeached him on cross-examination, Bergantzel's reliability would have been in question. A reasonable probability exists that the district court may have assessed Tallman and Green as being responsible for a smaller amount of drugs, resulting in a lesser sentence.

Accordingly, I dissent and would grant Tallman and Green a new trial, permitting them to fully cross-examine the Government's witnesses Bergantzel and Vermuele utilizing the withheld documents.