**Opinion issued August 12, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00882-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**DENNIS EDWARD GALLIEN, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1541083**

---

## O P I N I O N

A jury found appellee, Dennis Edward Gallien, guilty of the offense of aggravated robbery. *See* TEX. PENAL CODE § 29.03. After the jury could not agree on a sentence, the trial court granted a mistrial for the punishment phase. Gallien later filed a motion for mistrial and a motion for new trial for the guilt-innocence

phase. Gallien supported the motions with a juror's note that had been given to the trial court during the punishment phase. In the note, the juror had indicated that she was pressured by other jurors during deliberations in the guilt-innocence phase to find Gallien guilty. The trial court granted the motion for mistrial for the guilt-innocence phase as well.

On appeal, the State of Texas challenges the order granting a mistrial for the guilt-innocence phase of trial. Because the order is functionally indistinguishable from an order granting a motion for new trial, we have jurisdiction over this appeal. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(3). We agree with the State that granting the motion based on the juror's note was an abuse of discretion because the note was inadmissible under Texas Rule of Evidence 606(b). Even if it was admissible, the note was insufficient to show jury misconduct, and there were no other grounds that would support granting the motion.

We reverse the trial court's order granting a mistrial for the guilt-innocence phase of trial and remand the case to the trial court for further proceedings.

## Background

Gallien was indicted for the offense of aggravated robbery. The indictment alleged that "while in the course of committing theft of property owned by [the complainant], and with intent to obtain and maintain control of the property," Gallien "intentionally and knowingly threaten[ed] and place[ed] [the complainant] in fear of

2

imminent bodily injury and death, and [Gallien] did then and there use and exhibit a deadly weapon, namely, a knife." As enhancement allegations, the indictment also alleged that Gallien had previously been convicted of the extraneous offenses of possession of a controlled substance and aggravated robbery.

The jury found Gallien guilty of the offense of aggravated robbery as charged in the indictment. The trial court polled the jury, and each juror confirmed that "guilty" was the juror's "individual verdict."

That same day, the punishment phase began with the issue of punishment tried to the jury. Later that day, after the jury had begun deliberating, the jury foreman sent a note to the trial court notifying it that the jury was spilt 11-1 regarding whether to find the two enhancement allegations true. The trial court instructed the jury to continue deliberating.

The following day, the jury foreman sent another jury note to the trial court. The note was handwritten by Juror No. 32 and stated:

> What if a juror feels that they were pressured by their peers into a guilty verdict?
>
> I expressed to all of my fellow jurors that I was not comfortable with a guilty verdict due to the fact that the detective did not both confirm that the defendant understood and waived his rights. I feel that his Miranda rights were violated.
>
> That violation coupled with the witness testimony gave me cause for reasonable doubt and I believe the defendant to be innocent. Fearing that I would be bullied, I changed my verdict to guilty.

3

Now that we are in the punishment phase, the exact thing that I feared has come to pass as I have been belittled, berated, and threatened with perjury of court due to my beliefs regarding the additional charges being considered in sentencing.

Honestly, I am not comfortable with this entire process and am not sure how to proceed.

The trial court asked the foreman and the other jurors whether this note, coupled with the note from the previous day, indicated that the jury could not reach a unanimous verdict regarding punishment, and all jurors answered affirmatively. Gallien requested a mistrial for the punishment phase, which the trial court granted.

Four weeks later, Gallien filed a motion for mistrial and a motion for new trial as to the guilt-innocence phase of trial. As evidence supporting each motion, Gallien offered the jury note written by Juror No. 32. In his motion for mistrial, Gallien argued that the note revealed that the guilty verdict was not a unanimous verdict because it showed that the verdict was "not a true expression of all the juror[s'] opinions." Gallien asserted that Juror No. 32 voted guilty because of the other jurors' improper influence and "bullying" and "not because she believed that the evidence justified such a verdict." Gallien also claimed that "the note indicate[d] that some of the jurors participated in extreme misconduct—bullying, harassment, and even threat of criminal action." Gallien asserted that, "[i]n the interest of justice, a mistrial should be declared on the guilt innocence phase of trial."

4

In his motion for new trial, Gallien cited Rule of Appellate Procedure 21.3, claiming that (1) "the verdict was not decided by a fair expression of the jurors' opinion"; (2) "the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial"; (3) "the verdict is contrary to the law and the evidence"; and (4) "the juror was bribed to convict or has been guilty of any other corrupt conduct." *See* TEX. R. APP. P. 21.3. As he did in the motion for mistrial, Gallien relied on the jury note, asserting it showed that the guilty verdict had not been unanimous and that the jury had engaged in misconduct.

Gallien subsequently filed an amended motion for mistrial. As supporting evidence, Gallien attached the affidavit of Juror No. 32.

At the hearing on Gallien's motions, the trial court stated that it would not consider the amended motion for mistrial or Juror No. 32's affidavit:

> The Court is not taking anything into consideration from outside sources after the trial was over. I am just going to tell you that. And I think the cases are very clear on that no matter what the allegations are—and I am really surprised that you attempted to do that, that you tried to have that conversation with that juror.
>
> With that said, I didn't even read your amended motion, but I told you at the time all this—we were begging almost, calling both parties asking what do you want me to do with this case, what do you want it set for, and I need your cases.

The trial court allowed the juror's affidavit to be included in the record for appellate purposes but made clear that it would consider only the original motion for mistrial and the motion for new trial along with Juror No. 32's note.

5

Based on Rule of Evidence 606(b), the State objected to the trial court's consideration of the jury note. Generally, Rule 606(b) provides that, during an inquiry into the validity of a verdict or an indictment, a court may not receive a juror's affidavit or evidence of a juror's statement concerning the jury's deliberations. *See* TEX. R. EVID. 606(b). The trial court overruled the State's objection, stating that Rule 606(b) did not apply to the juror's note because the note was given to the court during trial, making it "part of the case" and "part of the public record." The trial court stated that the purpose of Rule 606(b) was to prevent parties from harassing jurors after trial, a time when a juror may, in hindsight, develop regret regarding his or her decision to vote guilty. Rejecting the case law offered by the State, the trial court said,

> What that case talks about is talking to a juror afterwards and people always have regrets when getting more information later, not what had occurred—like not something about bullying, etcetera, that she's made allegation occurred during the trial. That case was different. That's one thing that—I didn't see any cases talking about anything exactly like this case, to be perfectly honest with you, so—because they were distinguishable on their facts. I get the purpose of the rule. I see that, because that is what will happen. If you go start interviewing jurors afterward and they go well, you know, maybe you're right, maybe I did do the wrong thing. I absolutely see the purpose of it. This isn't the case here. So it's kind of a unique situation.

At the end of the hearing, the trial court denied Gallien's motion for new trial but granted his motion for mistrial "in the interest of justice." With respect to that ruling, the trial court stated,

6

All right. I am going to grant your motion for mistrial, not your motion for new trial. And I think it's already clear in the record, but just for clarity purposes, the note that was sent out was part of the jury verdict, part of the public record and that wasn't anything that was done or interviews or anything that took place afterwards or during or outside, that no one spoke to this juror. This is what the juror put in writing and it was placed into the record as part of their notes that they sent out during deliberations.

And I also think [the State's] cases are distinguishable in terms of the purpose and the reason that they didn't grant the motion for new trial or motion for mistrial, for different reasons. This is a little unique situation. But I think in the interest of justice, that this is the right thing to do. I agree with some of your reasons as well, [defense counsel], as far as, you know, if nothing else, the judicial economy of it, if nothing else—look, we've got this issue here, a mistrial on punishment, stated, you know, that X and Y happened during the guilt phase of the trial. No one is allowed to inquire about that with her. I totally agree with that under the rules. It's just what she stated.

So that's my decision. All right? That's my decision.

The State now appeals the order granting a mistrial for the guilt-innocence phase. The State does not challenge the trial court's order granting a mistrial for the punishment phase, which had resulted from the jury's inability to reach a verdict during that phase.

## Jurisdiction

If authorized by law, the State is entitled to appeal in a criminal case. TEX. CONST. art. V, § 26; *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992). As a threshold matter, we must determine whether we have jurisdiction over the State's appeal of the order granting a mistrial for the guilt-innocence phase.

7

There is no authority permitting the State to appeal an order granting a mistrial. *See State v. Boyd*, 202 S.W.3d 393, 400 (Tex. App.—Dallas 2006, pet. ref'd). However, Code of Criminal Procedure article 44.01(a)(3) permits the State to appeal a trial court's order granting a new trial. TEX. CODE CRIM. PROC. art. 44.01(a)(3). "A new trial, as contemplated by Article 44.01(a)(3) of the Texas Code of Criminal Procedure, is 'the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt.'" *Boyd*, 202 S.W.3d at 400 (quoting TEX. R. APP. P. 21.1)).

When determining its jurisdiction, an appellate court must look to the effect of the trial court's order. *Evans*, 843 S.W.2d at 577; *Boyd*, 202 S.W.3d at 400. The Court of Criminal Appeals has determined that when an order is "functionally indistinguishable" from or the "functional equivalent" of an order granting a new trial, a reviewing court can look past the label assigned to the order by the trial court and treat the order as one granting a new trial. *See State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996); *Evans*, 843 S.W.2d at 577. Thus, we review the substance of, and the facts and circumstances surrounding, the trial court's order. *Boyd*, 202 S.W.3d at 400.

Other courts have determined that when, like here, the order granting a mistrial is granted post-guilty-verdict and before the punishment verdict, the order is functionally indistinguishable from an order granting a new trial because it returns

8

the case to the posture it was in before trial. *See id.* at 401; *State v. Garza*, 774 S.W.2d 724, 726 (Tex. App.—Corpus Christi 1989, pet. ref'd).

For example, in *Boyd*, the defendant orally moved for a mistrial before the jury returned a verdict. 202 S.W.3d at 400. He described it as a motion for mistrial. *Id.* The trial court, not the defendant, allowed the motion to be "carried" past the jury's "guilty" verdict and until the punishment hearing. *Id.* Then, at the punishment hearing, on defense counsel's renewed oral motion for mistrial, the trial court orally pronounced its declaration of a mistrial. *Id.* The trial court's written order stated that it granted a mistrial and that "the cause [was] returned to the docket . . . pending retrial." *Id.* at 400–01. The case was reset for a jury trial one month after the trial court declared the mistrial. *Id.* at 401.

On appeal, the court concluded that the timing of Boyd's motion for a mistrial was not pivotal for determining its jurisdiction. *Id.* Instead, the court determined that the timing of the trial court's order setting aside the verdict was determinative of its jurisdiction. *Id.* Relying on the Court of Criminal Appeals' holding in *Evans* that "a post-verdict ruling which returns the case to the posture in which it had been before trial is functionally indistinguishable from an order granting a new trial," the *Boyd* court held that it had jurisdiction over the order granting Boyd's motion for a mistrial because the order was functionally indistinguishable from an order granting a new trial. *Id.* (quoting *Evans*, 843 S.W.2d at 578).

9

Here, the trial court granted Gallien's motion for mistrial for the guilt-innocence phase after the jury had returned a guilty verdict and after Gallien's motion for mistrial had been granted for the punishment phase. As a result, as in *Boyd*, the jury's guilty finding was set aside and the entire case was returned to the posture in which it had been before trial, that is, both Gallien's guilt and his punishment were yet to be determined after the signing of the complained-of order. *See id.* Accordingly, the trial court's order granting Gallien's motion for a mistrial is functionally indistinguishable from and functionally equivalent to an order granting a new trial, and we have jurisdiction over the State's appeal.[1] *See id.*; *State v. Doyle*, 140 S.W.3d 890, 892 (Tex. App.—Corpus Christi 2004, pet. ref'd) (holding State had right to appeal order granting mistrial—rendered after guilty verdict but before punishment phase began—because it was functionally

---

[1] On appeal, Gallien contends that the State waived its right to invoke our appellate jurisdiction because the State did not inform the trial court that it should grant the motion for new trial rather than grant the motion for mistrial. Gallien asserts, "It is the duty of the litigant to put the trial court on notice as to what is objectionable in order to give the trial court the opportunity to fix it." *See* TEX. R. APP. P. 33.1(a). However, the State's complaint has never been that that the trial court should have granted a motion for new trial rather than a motion for mistrial. Instead, the State opposed both motions advanced by Gallien—mistrial and new trial—and urged the trial court to uphold the jury's guilty verdict. We note that appellate courts analyzing similar orders have never found the form of the order to be an "error" but instead disregarded the order's label and reviewed the substance of the order (as we did above) to determine whether the court had appellate jurisdiction. *See State v. Boyd*, 202 S.W.3d 393, 400 (Tex. App.—Dallas 2006, pet. ref'd); *State v. Garza*, 774 S.W.2d 724, 726 (Tex. App.—Corpus Christi 1989, pet. ref'd). There is no merit to Gallien's waiver argument.

10

indistinguishable from order granting motion for new trial); *see also Garza*, 774 S.W.2d at 726 (concluding order granting mistrial after guilty verdict was "in substance . . . one granting a new trial").

### Grant of New Trial

In its sole issue, the State contends, "The trial court erred in granting a mistrial on the guilt phase based on a note from a disgruntled juror. The Rules of Evidence forbade the trial court from considering this note, and the note did not describe misconduct that would justify a mistrial."

### A.     Standard of Review

Because the complained-of order granting mistrial was functionally indistinguishable from an order granting a new trial, we review the order under the standards governing review of an order granting a new trial. *See Yates v. State*, 171 S.W.3d 215, 220–21 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The standard of review when a trial court grants a motion for a new trial is abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, "whether the trial court acted without reference to any guiding rules or principles." *Id.* at 907. A trial court abuses its discretion if it grants a new trial for a non-legal or a legally invalid reason. *Id.*

11

## B.     Trial Court's Consideration of Juror No. 32's Note

In his motion for mistrial, Gallien asserted that he should be granted a mistrial for the guilt-innocence phase because Juror No. 32's note demonstrated that the jury's verdict was not unanimous and revealed jury misconduct. The motion concluded by asking the trial court to grant a mistrial in the interest of justice. And, at the end of the hearing, the trial court stated that Gallien's motion was granted "in the interest of justice."[2] As the State points out, even the grant of a new trial "in the interest of justice" is not "unbounded or unfettered" because "justice" means "in accordance with the law." *Id.*

The State asserts that the grounds argued by Gallien in support of his motion cannot support the grant of a new trial because the grounds required the trial court to consider Juror No. 32's note, which was prohibited by Rule of Evidence 606(b):

---

[2]     Without elaboration, the trial court also stated that it agreed with defense counsel's position that granting the motion would serve the interests of "judicial economy." During the hearing on the post-trial motions, defense counsel indicated that it may be more judicially efficient to grant the mistrial and re-try the guilt-innocence and punishment phases together than trying the punishment phase alone and requiring Gallien to then appeal the resulting judgment. We note that Code of Criminal Procedure article 37.07, section 3(c) provides that, when a jury fails to agree on punishment, "a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach. The court shall impanel another jury as soon as practicable to determine the issue of punishment." TEX. CODE CRIM PROC. art. 37.07, § (3)(c). Thus, the occurrence of a hung jury during the punishment phase and how to proceed when it does occur is expressly addressed by the Code of Criminal Procedure. The statute does not contemplate vacating a jury's guilty verdict to retry the whole case in the interest of "judicial economy."

12

**Rule 606. Juror's Competency as a Witness**

. . . .

**(b) During an Inquiry into the Validity of a Verdict or Indictment**.

> **(1)** *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

> **(2)** *Exceptions.* A juror may testify:

>> (A) about whether an outside influence was improperly brought to bear on any juror; or

>> (B) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b).

In this case, no attempt was made to fit Juror No. 32's note into either exception found in Rule 606(b)(2). No claim was made that a juror was not qualified to serve, and the note made no mention of "an outside influence." We observe that courts, including the Court of Criminal Appeals in *Colyer v. State*, have recognized that a juror's statement regarding pressure by other jurors to vote guilty, as described in the Juror No. 32's note, is not admissible evidence of an impermissible "outside influence" contemplated by Rule 606(b). *See* 428 S.W.3d 117, 125 (Tex. Crim. App. 2014) (analyzing circumstances involving "outside influence" and stating that

13

"outside influence" exception does not include influences such as coercion by fellow jurors); *Franks v. State*, 90 S.W.3d 771, 800 (Tex. App.—Fort Worth 2002, no pet.) (holding juror's affidavit testimony that she was "coerced" into voting guilty and "finally just gave up and changed [her] vote" because other jurors "told her she was being unreasonable and was crazy" did not constitute "outside influence" for purposes of Rule 606(b)).

The trial court also did not overrule the State's Rule 606(b) objection to the note on the basis that the note did not concern the type of inadmissible jury-deliberation matters listed in Rule 606(b)(1). To the contrary, Juror No. 32's note did concern such matters. Specifically, the note concerned (1) statements made during the jury's deliberations, (2) the effect of the other jurors' statements on Juror No. 32's vote; and (3) Juror No. 32's mental processes concerning the verdict. *See* TEX. R. EVID. 606(b)(1).

Even though the rule's exceptions did not apply, and the note's content concerned the inadmissible subject matter encompassed by the rule, the trial court nonetheless determined that Rule 606(b) did not prohibit the court's consideration of the note during the inquiry into the guilty verdict's validity. The trial court indicated that it overruled the State's objection based on its understanding that Rule 606(b) applied only to jury-deliberation evidence obtained by the parties after trial.

14

The trial court pointed out that the note was not obtained after trial; rather, it was obtained after the guilty verdict, during the punishment phase of trial.

The trial court observed that some of the cases cited by the State, including *Colyer*, were distinguishable from this case because they involved juror testimony or statements given to impeach the verdict post-trial, after the jurors had been discharged. *See* 428 S.W.3d at 120–21. The trial court pointed out that the State's cited cases did not involve a juror's statement given during the trial court's proceedings before the jury had been released, like here.

Textually, Rule 606(b) applies only to inquiries into the validity of an indictment or a verdict to determine a juror's competency to act as a witness in those inquiries. TEX. R. EVID. 606(b). The rule does not limit its application to post-trial evidence, nor does it exclude from its application a juror's statement provided after the guilty verdict but before the end of trial. *See* TEX. R. EVID. 606(b). And, given that the rule applies to inquiries into a verdict's validity, it logically follows that the rule's application is not limited to post-trial evidence but also applies to a juror's testimony or statement obtained post-verdict even if obtained before the trial's end as part of the proceedings. Supporting this conclusion, Texas courts have characterized Rule 606(b) as prohibiting consideration of a juror's *post-verdict* testimony or statements. *See Colyer*, 428 S.W.3d at 123 (recognizing that, in 1983, Supreme Court of Texas adopted "Texas Rule of Civil Evidence 606(b), which,

15

except for two narrow exceptions, prohibits post-verdict juror testimony to impeach a verdict" (internal footnote omitted)); *Casiano v. State*, 462 S.W.3d 174, 178 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Texas Rule of Evidence 606(b) prohibits post-verdict testimony about events or statements that occurred during jury deliberations, the jurors' mental processes, or how an improper influence affected the jurors."); *cf. Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 375 (Tex. 2000) (recognizing that Rule 606(b) "expressly appl[ies] only to post-verdict juror testimony").

Providing further support, courts have held that Federal Rule of Evidence 606(b), which is essentially identical to our Texas Rule 606(b), prohibits impeaching a verdict with juror testimony obtained after the guilty verdict but before the jury is discharged.[3] One such case is *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003) (per curiam). There, four co-defendants were tried together on criminal charges relating to the importation of heroin. *Id.* at 863. The jury returned a guilty verdict for a conspiracy charge against one co-defendant, Stover. *Id.* at 864. The jury was polled "and the verdict found unanimous." *Id.* The jury continued deliberations, considering conspiracy charges against Stover's co-defendant, Henry. *See id.* Five

---

[3]     Because our Rule 606(b) is essentially identical to its federal counterpart in the Federal Rules of Evidence, we "look to federal cases and commentary for guidance in its proper construction." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *see Colyer v. State*, 428 S.W.3d. 117, 124–130 (Tex. Crim. App. 2014) (relying on federal caselaw and commentaries to analyze Texas Rule 606(b)).

days after its verdict against Stover, the jury notified the trial court that it could not reach a unanimous verdict regarding the conspiracy charges against Henry. *Id.* The jury also sent a note to the trial court indicating that some of the jurors believed that they had found Stover guilty on an incorrect evidentiary basis and requested to redeliberate Stover's verdict. *Id.* The trial court terminated deliberations for the conspiracy charge against Henry and informed the jurors that they could not redeliberate Stover's verdict. *Id.*

Stover appealed his conviction "on the ground the [trial court] failed to act on [the] note from the jury," which he claimed "cast doubt on its guilty verdict." *Id.* Affirming Stover's conviction, the court held that "Rule 606(b) . . . bar[red] eliciting juror testimony . . . to impeach the verdict against Stover, which was unanimously rendered, as the contemporaneous polling confirmed, five days before the judge received the note." *Id.* at 865. The court also rejected Stover's argument that "the [trial] court erred in not summoning Stover's lawyer and responding to the jury note in open court in his presence," because "[s]uch action . . . would have availed Stover naught as Rule 606(b) would nonetheless have foreclosed altering the verdict based on the note or additional juror testimony." *Id.* at 866; *see United States v. Stansfield*, 101 F.3d 909, 915–16 (3rd Cir. 1996) (rejecting contention that Rule 606(b) applies only after jury has been discharged and holding that Rule 606(b)'s prohibition of using juror testimony to impeach verdict applied before jury's discharge),

17

*abrogation on other grounds recognized by United States v. Tyler*, 732 F.3d 241, 251–52 (3rd Cir. 2013)); *see also United States v. Tallman*, 952 F.2d 164, 166 (8th Cir. 1991) (concluding that Rule 606(b) prohibited trial court from considering, in support of motion for new trial, juror's note sent to court during deliberations and alleging coercion by fellow jurors).

The policy considerations underlying Rule 606(b) also support concluding that the rule applies to a post-guilty verdict juror statement such as Juror No. 32's note. At the hearing on Gallien's motions, the trial court indicated that it understood the policy interest behind Rule 606(b) to be protecting jurors from post-trial harassment. While that is a policy interest underlying the rule, prevention of juror harassment is not the only such policy interest.

In *Colyer*, the Court of Criminal Appeals explained, "The purpose of Rule 606(b) is to limit the role jurors may play in attacking the validity of a verdict. This limitation serves four important policy interests: It encourages jurors to candidly discuss the case, protects jurors from post-trial harassment, promotes finality, and prevents tampering and fraud." 428 S.W.3d at 123–24 (internal quotation marks and citations omitted).

Permitting a trial court to consider a juror's post-verdict statement, such as Juror No. 32's note, would not only undermine the purpose of Rule 606(b) to limit the role jurors may play in attacking the validity of a verdict, but it would also

undermine the policy interest of encouraging jurors to candidly discuss the case. *See id.* While emphasizing Rule 606(b)'s importance to our legal system, the United States Supreme Court cautioned, "[F]ull and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Tanner v. United States*, 483 U.S. 107, 120–21 (1987). Interpreting Rule 606(b) as not applying to a juror's post-verdict statement revealing the innerworkings of the jury room because the statement was obtained during trial would serve to stifle full and frank discussions in the jury room and undercut the public's confidence in the system. *See id.* But interpreting the rule to apply to post-verdict juror testimony and statements, even to statements made as part of the trial record, would serve the policy interest of fostering candid jury deliberations while still protecting jurors against harassment.

Furthermore, applying the rule to post-verdict juror statements, rather than only to post-trial statements, also best serves the policy interest of finality of verdicts. Relevant to this policy, Code of Criminal Procedure article 37.05(a) provides,

> The State and the defendant each have the right to have the jury polled, which is done by calling separately the name or identification number of each juror and asking the juror if the verdict is the juror's. If all jurors, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answers in the negative, the jury shall retire again to consider its verdict.

19

TEX. CODE CRIM. PROC. art. 37.05(a).

Here, after the jury agreed that Gallien was guilty, the defense asked the trial court to poll the jury. When called upon, each juror, including Juror No. 32, confirmed that "guilty" was that juror's individual verdict. This marked the guilty verdict's finality for purposes of article 37.05 and terminated the opportunity for the jury to continue deliberations. *See id.* Applying Rule 606(b) only to statements obtained after a trial's completion and not to statements made after confirmation of a jury's verdict, but before the trial's completion, would undermine the finality of jury verdicts. *See id.*

Lastly, Rule 606(b) prevents "fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations." *United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976). Failing to apply the rule to juror testimony and statements obtained in the immediate post-verdict period during trial would weaken this preventative measure.

"As Judge Learned Hand cautioned, without Rule 606(b), judges would become like mythological 'Penelopes, forever engaged in unraveling the webs they wove.'" *Colyer*, 428 S.W.3d at 124 (internal footnote omitted) (quoting *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir. 1947)). "To this day, courts try to maintain the balance between the goal of 'a trial by a jury free from bias or misconduct' and the need to prevent losing parties from trying the jury." *Id.* (quoting

20

*Golden Eagle*, 24 S.W.3d. at 367–68). Construing Rule 606(b) to bar post-verdict juror statements, even when the statement is part of the trial process, is required to maintain this balance. *See Tanner*, 483 U.S. at 120 ("There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it."). "In sum, Rule 606(b) protects a good system that cannot be made perfect." *Colyer*, 428 S.W.3d at 124.

We conclude that, based on the rule's language, the caselaw, and the underlying policy interests, Rule 606(b)'s application is not limited to juror testimony and statements obtained post-trial. The rule also applies to juror testimony and statements, such as Juror No. 32's note, obtained as part of the trial proceedings after the jury's rendition of the verdict being challenged but before the end of trial. We conclude that Rule 606(b) barred the trial court's consideration of Juror No. 32's note in ruling on Gallien's motions challenging the validity of the jury's guilty verdict.

And, even if Rule 606(b) did not bar the trial court's consideration of the jury note, the note was not sufficient to support the grant of a new trial arising from jury misconduct. As mentioned, Juror No. 32 stated as follows in the note:

> What if a juror feels that they were pressured by their peers into a guilty verdict?

21

I expressed to all of my fellow jurors that I was not comfortable with a guilty verdict due to the fact that the detective did not both confirm that the defendant understood and waived his rights. I feel that his Miranda rights were violated.

That violation coupled with the witness testimony gave me cause for reasonable doubt and I believe the defendant to be innocent. Fearing that I would be bullied, I changed my verdict to guilty.

Now that we are in the punishment phase, the exact thing that I feared has come to pass as I have been belittled, berated, and threatened with perjury of court due to my beliefs regarding the additional charges being considered in sentencing.

Honestly, I am not comfortable with this entire process and am not sure how to proceed.

The note indicated that, during the guilty phase, Juror No. 32 felt pressured by the other jurors. She stated that she changed her vote to guilty based on her fear of being bullied. Juror No. 32 said that her fears only came to pass during the punishment phase, indicating that, during the guilt-innocence phase, she, at most, was only pressured by the other jurors. As one court observed, the type of allegation presented by Juror No. 32 "can suggest the normal dynamic of jury deliberations, with the intense pressure often required to reach a unanimous decision." *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990). And, as another court explained, "[T]otal placidity is not the nature of jury deliberation." *Tallman*, 952 F.2d at 167. In short, the information in Juror No. 32's note as it relates to the guilt-innocence phase of trial is too ambiguous and speculative to infer anything more

than that the jury engaged in the deliberative process. This is particularly true when read in conjunction with Juror No. 32's affirmative statement to the trial court when polled that the guilty verdict was her individual verdict.

To restate, Gallien's post-trial motions were based on allegations of jury misconduct. Because allegations of jury misconduct require supporting evidence to warrant a new trial, and the jury note was the only evidence offered to support the allegations, the trial court abused its discretion in granting Gallien's motion for mistrial, which was functionally indistinguishable from an order granting a new trial. *See Fletcher v. State*, No. 01–15–00966–CR, 2016 WL 6962307, at \*14 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. ref'd) (mem. op., not designated for publication) (recognizing that, to support motion for new trial based on jury misconduct, affidavits or other evidence must be offered); *Tinker v. State*, 148 S.W.3d 666, 673 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (sustaining denial of motion for new trial that asserted jury misconduct because trial court properly quashed juror's supporting affidavit pursuant to Rule 606(b), and no other evidence was offered to support motion for new trial).

## B.   Other Grounds for New Trial

In his brief, Gallien contends that, even if Rule 606(b) applies to Juror No. 32's note, portions of the note do not pertain to the jury's deliberative process and are admissible to support the trial court's grant of a new trial on grounds aside from

23

jury misconduct. Based on provisions of Rule 21.3 cited in his motion for new trial, and what he claims are admissible portions of Juror No. 32's note, Gallien asserts that the trial court could have granted the motion because (1) "it believed the verdict was not decided by a fair expression of the jurors' opinion"; (2) "it believed the verdict was contrary to law because Mr. Gallien's *Miranda* rights ha[d] been violated"; or (3) "the verdict was contrary to the law and evidence." *See* TEX. R. APP. P. 21.3.[4]

As mentioned, we review a trial court's grant of a motion for new trial for abuse of discretion. *Herndon*, 215 S.W.3d at 906. In *Herndon*, the Court of Criminal Appeals stated that a trial court generally does not abuse its discretion in granting a new trial if the defendant (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the harmless error standards in Rule of Appellate Procedure 44.2. *Id.* at 909. The Court of Criminal Appeals has also "repeatedly held" that

> [a]n essential element of [a motion for new trial] is that the matter of error relied upon for a new trial must be specifically set forth therein. The wisdom of that rule lies in the fact that reasonable notice should be given not only to the trial court but the State, as well, as to the

---

[4] We note that, although Gallien now relies on his motion for new trial, the trial court expressly denied his motion for new trial and granted his motion for mistrial. Gallien's motion for mistrial makes no reference to Rule 21.3, which he now relies on to affirm the trial court's ruling.

misconduct relied upon and to prevent a purely fishing expedition on the part of the accused.

*State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013) (citing *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993); *Harvey v. State*, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947)).

In his motion for new trial, Gallien alleged that "the verdict [was] contrary to the law and the evidence." *See* TEX. R. APP. P. 21.3(h). By making this allegation, Gallien met the first *Herndon* prong because "allegations that a verdict was against the law and the evidence raised a sufficiency challenge and *only* a sufficiency challenge." *Zalman*, 400 S.W.3d at 594 (emphasis in original). Consequently, Gallien's motion "raised the valid legal claim of insufficient evidence to support the verdict," but by asserting that the "the verdict [was] contrary to the law," he did not provide notice of a claim that his *Miranda* rights were violated, an assertion that he makes in his brief. *See id.* Thus, because he did not provide notice of the *Miranda*-violation claim in his motion, that claim could not support the trial court's grant of a new trial.[5] *See id.*

Next, because Gallien articulated a valid legal claim with respect to a sufficiency challenge, we must look to the second step of *Herndon*: did he supply or

---

[5]     Gallien also did not show the third *Herndon* prong with respect to his *Miranda*-violation allegation because he did not show prejudice to his substantial rights under the harmless error standards of the Rules of Appellate Procedure. *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007).

point to evidence in the trial record that substantiated his legal claim? *See id.* Gallien contends that he did because he relied on Juror No. 32's note in which she stated that the alleged *Miranda* violation, "coupled with the witness testimony gave [her] cause for reasonable doubt and [that she] believe[d] the defendant to be innocent." But the cited statement shows Juror No. 32's "mental processes concerning the verdict," which is inadmissible under Rule 606(b) to support the motion. Moreover, Gallien never indicated in his motion or at the hearing that he was relying on Juror No. 32's note to support an insufficiency-of-the-evidence claim, nor did he "at any point, advance a claim that the evidence admitted was insufficient to sustain a guilty verdict." *See id.* Thus, Gallien's insufficiency claim could not support the grant of a motion for new trial.

Lastly, Gallien points out that his motion for new trial alleged that "the verdict was not decided by a fair expression of the jurors' opinion." *See* TEX. R. APP. P. 21.3(c). However, Gallien did not meet the second *Herndon* prong with respect to this claim. To substantiate the claim, Gallien pointed to Juror No. 32's statement in her note that she was pressured by the other jurors to vote guilty. As discussed above, the statement was inadmissible under Rule 606(b). Thus, it cannot satisfy the second *Herndon* prong. *See Herndon*, 215 S.W.3d at 909. We conclude that Gallien's motion for new trial did not present any legal claims that could successfully support the trial court's grant of a new trial. *See id.*

We sustain the State's sole issue.

## Conclusion

We reverse the trial court's order granting Gallien's motion for mistrial for the guilt-innocence phase, which was functionally indistinguishable from an order granting a motion for new trial. The State made no challenge to the trial court's order granting the motion for mistrial for the punishment phase, and that order remains intact. We remand the case to the trial court for further proceedings.

Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

Justice Landau, concurring without opinion.

Publish.  *See* TEX. R. APP. P. 47.2(b).